IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| RATES TECHNOLOGY INC., | X : | |
| Plaintiff, | : : | |
| v. | : : | Civil Action No. 07-442 JJF |
| QWEST COMMUNICATIONS CORP., et al., | : : | |
| Defendants. | : : | |
|  | X | |

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
OR STAY COMPLAINT; REQUEST FOR LEAVE TO TAKE DISCOVERY**

Mary B. Matterer (#2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
302.888.6800
mmatterer@morrisjames.com

*OF COUNSEL*:

Robert L. Epstein
Epstein Drangel Bazerman & James, LLP
60 East 42nd Street, Suite 820
New York, NY 10165
212.292.5390
repstein@ipcounselors.com

Attorneys for Plaintiff
*RATES TECHNOLOGY INC.*

Dated: October 4, 2007

# TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................................2

II.   RTI HAS ALLEGED VALID PATENT INFRINGEMENT CLAIMS
      AGAINST QWEST, AND QWEST'S RULE 12(b)(6) MOTION
      SHOULD BE DENIED .................................................................................................4

III.  THE EVIDENCE SUPPORTS RTI'S PATENT INFRINGEMENT CLAIMS
      AGAINST QWEST, AND QWEST'S SUMMARY JUDGMENT MOTION
      SHOULD ALSO BE DENIED ......................................................................................5

      A.   RTI Has Valid Patent Infringement Claims Against Qwest .................................7

      B.   Qwest Has Also Completely Mischaracterized The Reexamination Process.....13

      C.   At the Very Least, RTI Should Be Allowed to Take Discovery .........................15

IV.   QWEST'S MOTION TO STAY THIS LAWSUIT SHOULD
      ALSO BE DENIED ....................................................................................................17

V.    CONCLUSION...........................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Alltech v. Cenzone,*
  2007 U.S. Dist. LEXIS 19989 (S.D. Cal. 2007) — 15, 17

*Apple Computer, Inc. v. Unova, Inc.,*
  2003 WL 22928034, at p. 5 (D. Del. 2003) — 3, 6, 16, 17

*Aro v. Convertible Top Rep. Co.,*
  377 U.S. 476 (1964) — 11

*Arrival Star v. Descartes Sys. Group,*
  2004 WL 2496622, at p. 4 (S.D.N.Y. 2004) — 3, 16

*Bell Atlantic Corp. v. Tombley,*
  127 S.Ct. 1955 (2007) — 5

*Burlington N. Santa Fe R.R. v. Assiniboine Tribe,*
  323 F.3d 767 (9th Cir. 2003) — 3, 16, 17

*Cambridge v. Penn Nutrients,*
  962 F.2d 1048 (Fed. Cir. 1992). — 3, 16, 17

*Cognex v. National,*
  2001 U.S. Dist. LEXIS 25555 (Del. 2001) — passim

*Dawson Chemical Co. v. Rohm & Haas Co.,*
  448 U.S. 176 (1980) — 11

*E.I. DuPont de Nemours & Co. v. Great Lakes Chemical Corp.,*
  383 F.Supp. 2d 642 (D. Del. 2005) — 5

*Enzo Life Sciences v. Digene Corp.,*
  295 F.Supp. 2d 424 (D. Del. 2003) — 5

*FMC v. Up-Right, Inc.,*
  816 F.Supp. 1455 (N.D. Cal. 1993) — 12

*Glenayre v. Jackson,*
  443 F.3d 851 (Fed. Cir. 2006); — 12

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) — 5

*Hoffman-La Roche v. Invamed Inc.,*
  213 F.3d 1359 (Fed. Cir. 2000) — 3

*Loral Fairchild Corp. v. Victor Co.*,
  911 F.Supp. 76 (E.D.N.Y. 1996) ............ 3

*Lujan v. National Wildlife Federation*,
  497 U.S. 871 (1990) ............ 7, 11, 13

*Mobius Mgt. Sys., Inc. v. Acartus, Inc.*,
  __ F.Supp.2d __, Case No. 05-346 (D. Del. slip op. June 28, 2006) ............ 6, 16

*OpenLCR.com, Inc. v. Rates Technology Inc.*,
  112 F.Supp.2d 1223 (D. Colo. 2000) ............ 13

*Scheuer v. Rhodes*,
  416 U.S. 232 (1974) ............ 5

*Semiconductor Energy v. Chi Mei*,
  2007 U.S. Dist. LEXIS 44288 (N.D. Cal. 2007) ............ 12

*Sony Corp. v. Universal Studios, Inc.*,
  464 U.S. 417 (1984) ............ 11

*Trustmark Ins. Co. v. ESLU*,
  299 F.3d 1265 (11th Cir. 2002) ............ 6

**Other Authorities**

35 U.S.C. §102 ............ 14
35 U.S.C. §103(a) ............ 14
35 U.S.C. §271(c) ............ 11
35 U.S.C. §282 ............ 13
35 USC §103(a) ............ 15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RATES TECHNOLOGY INC., | X <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | : <br> :      Civil Action No. 07-442 JJF |
| QWEST COMMUNICATIONS CORP., et al., | : <br> : |
| Defendants. | : <br> X |

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
OR STAY COMPLAINT; REQUEST FOR LEAVE TO TAKE DISCOVERY**

RTI alleges that Qwest infringes its patents, and it gave Qwest notice of infringement; but when Qwest refused to stop infringing, RTI had to file suit. Amended Complaint ¶¶8-22. These allegations are accepted as true on a 12(b)(6) motion, and are supported by RTI's evidence; and although Qwest says the claims of RTI's '085 patent are invalid due to a preliminary rejection in a reexamination proceeding, that mischaracterizes the consequences of a preliminary rejection. Epstein Decl. ¶¶7-43. RTI's claims are valid, and over 140 companies in the VoIP field -- including traditional phone companies, ITSP's (VoIP companies), cable voice companies, mobile voice messengering (Internet) companies, and VoIP system components manufacturers -- are covered under these same patents.

The bottom line is there's no reason to stay or dismiss this case, especially since RTI's '769 patent isn't subject to reexamination. Therefore, the pending '085 proceeding cannot determine all the issues in this case. *See Cognex v. National*, 2001 U.S. Dist. LEXIS 25555 (Del. 2001).

I.    INTRODUCTION

RTI is a well-respected technology company in the telephony field that is responsible for several major inventions relating to methods and apparatus for automatically routing phone calls based on cost which are the foundation of modern telephone systems, such as the Internet-based switched telephone systems using Voice over Internet Protocol ("VoIP") technology that have recently dominated the telephone industry.

RTI holds patents covering those inventions, and has successfully covered many of the prominent telephone service providers, including Internet telephone service providers ("ITSP's") under those patents.  Qwest is one such ITSP which provides VoIP telephone services through its "OneFlex" services.

RTI is recognized in the telephone industry as a technology innovator and for dealing fairly and honorably with companies that use its technology.  Prior to instituting litigation, RTI routinely gives notice to companies that it believes are infringing its patents, and tries to settle its infringement claims on a fair basis.  In most cases, the claims are settled and litigation is not required.  However, sometimes that is not possible and, as in this case, litigation is necessary.

Both of the RTI patents in involved in this litigation have been previously involved in re-examination proceedings -- and in each case, the validity of each claim has been confirmed by the United States Patent & Trademark Office (the "USPTO"). They have also been involved in a number of lawsuits, and they have never been found invalid or unenforceable.  There is simply no reason that they cannot be asserted in this case against Qwest.

Qwest's instant Rule 12(b)(6) motion requires the Court to accept the factual allegations of RTI's amended complaint as true, to determine whether it states a cause of action upon which relief can be granted. To properly plead a claim for patent infringement, all that is required is that

the plaintiff allege that it is the owner of a patent, and that the defendant has committed one or more acts which infringe one or more claims of that patent. RTI has clearly done that in its amended complaint. Qwest's outrageous mischaracterization of the status of the claims of the '085 patent in the current re-examination proceeding are entirely irrelevant -- and also lack merit.

Qwest, in apparent recognition, realizes Rule 12(b)(6) dismissal motion is defective, asks the Court to convert it to a summary judgment motion, but RTI has now submitted evidence that Qwest's services are infringing. Moreover, RTI hasn't been able to take any discovery, and "[w]here ... a summary judgment motion is filed early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion [for a continuance to take discovery] fairly freely." *Burlington N. Santa Fe R.R. v. Assiniboine Tribe*, 323 F.3d 767, 773 (9th Cir. 2003). *See Apple Computer, Inc. v. Unova, Inc.*, 2003 WL 22928034, at p. 5 (D. Del. 2003) (denying dismissal motion; "The parties have not yet engaged in discovery and, at this early stage, factual determinations are not appropriate.").

This is especially true because a "plaintiff is not required to know at the time of pleading all facts to establish the claim" -- *Arrival Star v. Descartes Sys. Group*, 2004 WL 2496622, at p. 4 (S.D.N.Y. 2004) – and RTI is entitled to take discovery, both to develop its infringement claims and to supplement its pre-filing investigation. *Hoffman-La Roche v. Invamed Inc.*, 213 F.3d 1359, 1364 (Fed. Cir. 2000); *Cambridge v. Penn Nutrients*, 962 F.2d 1048, 1050 (Fed. Cir. 1992). *See Loral Fairchild Corp. v. Victor Co.*, 911 F.Supp. 76, 79 (E.D.N.Y. 1996) (patent infringement plaintiff can use discovery to develop claims construction theories).

RTI understands nobody wants to be a defendant in a patent infringement suit and Qwest is no exception. However, RTI is entitled to protect its rights and enforce its patents against

companies that use its patented technology without paying for the privilege. Furthermore, although Qwest complains that RTI has sued other companies for patent infringement and then settled those cases, Qwest cites no evidence that RTI did anything other than settle those cases after filing suit – which is what most federal judges want parties to accomplish.

The bottom line is that Qwest's papers' accusations against RTI aren't just inaccurate, but they are also irrelevant to the issues here, which are (1) whether RTI's amended complaint states a cause of action; (2) whether there are disputed factual issues whether Qwest infringes at least one claim of one of RTI's patents, and if not, whether RTI is entitled to take discovery in order to develop its infringement claims; and (3) whether this action should be stayed.

The answers, as explained below, are that RTI's infringement claims are perfectly valid, and there's no reason to stay or dismiss this case – especially since RTI's '769 patent isn't subject to re-examination, and so the pending '085 proceeding cannot determine all the issues in this case. *See Cognex v. National*, 2001 U.S. Dist. LEXIS 25555 (Del. 2001). Thus, RTI respectfully submits that Qwest's motions should be denied.

## II.    RTI HAS ALLEGED VALID PATENT INFRINGEMENT CLAIMS AGAINST QWEST, AND QWEST'S RULE 12(b)(6) MOTION SHOULD BE DENIED

This case arises out of Qwest's infringement of RTI's '085 and '769 patents, including through its OneFlex services allowing telephone calls to be made over the internet. RTI's '085 patent "relat[es] to the routing of telephone calls based upon cost," and its '769 patent "relat[es] to a method for updating a database in a telephone call routing system." Amended Complaint ¶¶8, 16. Qwest infringes the patents through "its OneFlex broadband voice / VoIP service and ... products and equipment to support such services ..., in order to offer traditional voice telephony services across its VoIP platform and to enhance end user customers' voice and data networking ability." *Id.* at ¶¶10, 18. RTI gave Qwest notice of infringement, and when Qwest refused to

4

stop its infringing activities, RTI had no choice but to sue it for infringement. *Id.* at ¶¶14, 22.

That should be the end of the matter, since a court accepts all factual allegations as true on a Rule 12(b)(6) motion even if "a recovery is very remote and unlikely." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Harlow v. Fitzgerald*, 457 U.S. 800 (1982). *Accord, Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003). RTI's amended complaint is based on the approved federal model form patent infringement complaint – *see* Fed.R.Civ.P. Form 16 ("Complaint for Patent Infringement") – and the Supreme Court recently approved the use of such forms. *Bell Atlantic Corp. v. Tombley*, 127 S.Ct. 1955, 1971 n.10 (2007). *Accord, Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d. Cir. 2007).

Thus, there's simply no basis for Qwest's Rule 12(b)(6) dismissal motion, because "[t]he purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of a case." *E.I. DuPont de Nemours & Co. v. Great Lakes Chemical Corp.*, 383 F.Supp.2d 642, 644-45 (D. Del. 2005) (denying dismissal motion). *See also Enzo Life Sciences v. Digene Corp.*, 295 F.Supp.2d 424, 430 (D. Del. 2003) (same; "all [plaintiff] was required to do was to provide 'a short and plain statement of [its] claim showing [it] is entitled to relief,'" and noting there are discovery mechanisms for ascertaining more details regarding the allegations in the complaint). Qwest's dismissal motion should therefore be denied.

III.    THE EVIDENCE SUPPORTS RTI'S PATENT INFRINGEMENT CLAIMS AGAINST QWEST, AND QWEST'S SUMMARY JUDGMENT MOTION SHOULD ALSO BE DENIED

Qwest ignores the procedural rules governing a 12(b)(6) motion, and under the guise of making a premature summary judgment motion, Qwest makes all sorts of accusations against RTI in an apparent attempt to prejudice the Court and get the case dismissed without any real basis.

As a preliminary matter, RTI objects to Qwest's summary judgment motion as procedurally defective, since its Notice of Motion only gives notice of a Rule 12(b)(6) motion and a motion to stay the litigation. To the extent the Court is inclined to convert Qwest's Rule 12(b)(6) motion into a summary judgment motion, RTI requests notice and an opportunity to submit further briefs and evidence. *Trustmark Ins. Co. v. ESLU*, 299 F.3d 1265, 1267 (11th Cir. 2002).

Qwest's motion is also premature, since no discovery has taken place. As this Court has noted, "factual determinations are not appropriate" at an early stage of litigation where "[t]he parties have not yet engaged in discovery." *Apple, supra*, 2003 WL 22928034 at p. 5. *See Mobius Mgt. Sys., Inc. v. Acartus, Inc.*, __ F.Supp.2d __, Case No. 05-346 (D. Del. slip op. June 28, 2006) (noting that factual issues should be resolved after the close of discovery and not at the pleadings stage).

Moreover, as detailed in the following sections, Qwest's summary judgment motion also lacks any basis, since it has never shown any real defense to RTI's infringement claims, either prior to this motion or in its moving papers, and in fact RTI has valid patent infringement claims against Qwest. Moreover, Qwest mischaracterizes the consequences of a re-examination proceeding's first office action with a preliminary rejection arguing that RTI's '085 patent has somehow been rejected as a matter of law, when that's not true at all.

The bottom line is that Qwest is merely doing what almost every defendant does – *i.e.*, deny all liability – and it wants the Court to take its word for it. That's no basis for dismissing a lawsuit, Qwest's motion should be denied for each of the following reasons:

6

A. <u>RTI Has Valid Patent Infringement Claims Against Qwest</u>:

Qwest's argument that RTI has no basis for suing it is little more than a request for the Court to accept its representations that it doesn't infringe RTI's patents. But no testimonial or documentary technical information has been provided by Qwest to this Court, to substantiate its defense of non-infringement. Clearly, just because a defendant in a patent infringement suit says it does not infringe (as virtually all defendants in patent infringement lawsuits do, at least at the outset of litigation), a plaintiff is not obligated to take that defendant's unsubstantiated word for it and refrain from pursuing its infringement claim. Likewise, a court should not take a defendant's unsubstantiated denial of a claim, and on that basis dismiss a complaint in an infringement lawsuit. As the United States Supreme Court has explained, summary judgment should not be granted on the basis of "conclusory affidavits". *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990).

In fact, RTI has valid infringement claims against Qwest. As noted above, RTI's amended complaint alleges that Qwest directly and/or contributorily infringes the claims of the RTI patents. Amended Complaint ¶¶8-22. *See generally* Epstein Decl. ¶10. RTI's theory of direct infringement of the main claim (claim 1) of the '085 patent with regard to the Qwest OneFlex systems is set forth in the Qwest OneFlex Systems Claim Chart annexed to the Epstein declaration as Exhibit A and the accompanying diagram annexed as Exhibit B. These exhibits provide RTI's element-by-element analysis of how the main claim of the '085 patent is directly infringed by Qwest's OneFlex systems, and in fact, this is the type of claim analysis typically presented by a plaintiff to the factfinder at trial to demonstrate infringement. *Id.* at ¶¶10-11.[1]

---

[1] Because Exhibits "A" and "B" are confidential, and there is no protective order in place at this early stage of the litigation, RTI is designating such documents as confidential under L.R. 26.2, and is filing them separately under seal.

Qwest argues that its OneFlex systems cannot infringe the claims of the '085 patent since the OneFlex systems supposedly do not include a database means for storing billing rate parameters, or a means for addressing the database means for identifying a plurality of communications switch paths. But RTI contends, and as explained bt RTI's long-time patent counsel, the Qwest OneFlex systems do – and in fact _must_ -- have a database in which cost information relating to possible routes is stored, and must also have a means for addressing that database to obtain the information stored therein. _Id._ at ¶12.

Basically, "Qwest's OneFlex systems are internet based telephone systems which use voice over internet protocol (VoIP) technology to provide subscribers to the systems with real-time, two-way voice communication capability, as well as voice mail, integrated messaging and other related telecommunications services over a broadband connection." _Id._ at ¶13. The One-Flex systems employ Qwest OneFlex VoIP Adapters connected between the subscriber's telephone and the subscriber's computer which convert the analogue signals from the subscriber's telephone into digital signals which are forwarded via the internet to a call processing center which forms a part of the OneFlex systems. The call processing center automatically determines the route that the call will follow as it works its way through the system to the destination telephone and controls the various routers, relays and gateways which actually form the pathway for the call." _Id._

Thus, "In order for the call processing center to accurately and efficiently route the high volume of calls that the system must handle, it must have a computer with a database that stores cost-related information for the various possible routes for a telephone call and a circuit to address that database to obtain the stored information upon which the call routing is based" (_id._ at ¶14):

8

"For example, a dialed call from a OneFlex subscriber is sent to a central call processing center which has a computer with database that stores the address of each telephone in the OneFlex system. As an initial matter, the dialed number is compared in the computer database to each of the stored subscriber telephone numbers to determine if the call is destined to a VoIP capable subscriber telephone or not. If the call is destined for a VoIP capable subscriber telephone, it will be routed via the internet in digital form to the subscriber's telephone where it will be converted into an analog signal. If not, the call will be converted back to analog and at some point placed ('dropped' is the term that is used) back to the public switched telephone network (PSTN) (which is the non-internet telephone network that existed prior to internet telephone systems) and sent from that location on the PSTN to the non-subscriber telephone, just like a non-internet based call."

*Id.* at ¶15. "If it is determined that the call is directed to the telephone of another OneFlex subscriber, and hence the called telephone is that of a subscriber and is VoIP capable, it will be sent through various relays and routers in the Qwest system to an IP Gateway (sometimes called a border controller or gateway) within the OneFlex system to the subscriber destination telephone. The call processing center will consult the computer database to select which of the many possible relays, routers and IP gateways in the system are used to route the call. This selection process is accomplished by taking into account the available capacity of each component and the cost of utilizing that component to route the call such that the call is routed in the most economical manner." *Id.* at ¶16.

"On the other hand, if the call is destined for a telephone that is not within the OneFlex system, that is, to the telephone of a non-subscriber, that call must at some point be 'dropped' onto the PSTN so that it can be received by the non-subscriber telephone. In order to that efficiently, the call processing center must determine which of the many possible PSTN gateways in the OneFlex system can transfer the call to the destination telephone at the least cost." *Id.* at ¶17.

For example, assume that the calling telephone is in Seattle and the called non-subscriber called telephone is located in New York:

> "The OneFlex system has PSTN gateways in Ohio, Texas and New Jersey. The call processing center will use the dialed number to access the computer database and determine the cost for sending the call through each of the PSTN gateways from which it will be dropped to the PSTN and thereafter be routed by the PSTN to the destination telephone. Commonly (but not always), the PSTN gateway in New Jersey will be preferred because the overall cost of the call using that PSTN gateway will be less that for the other routes, due to the proximity of the New Jersey PSTN gateway to the New York non-subscriber telephone. However, if the PSTN gateway in New Jersey has no available routing capacity because it is already handling all the calls it can handle, then the call processing center will successively chose the other PSTN gateways until the next least cost route with capacity is determined.

> "If the call is to a non-subscriber in France, for example, and the Qwest system has no PSTN gateway located in France, long distance carrier routing must take place between the nearest PSTN gateway to the destination telephone (for example, a PSTN gateway in the UK) and the destination telephone. The call processing center will consult the cost information in the computer database to select one of several possible long distance carriers to send the call from the PSTN gateway in the UK to the destination telephone in France."

*Id*. at ¶¶18-19. "Given the high volume of calls handled by the system, the speed with which each call must be routed and the variations in cost inherent in the many possible routes, it is not possible to perform the routing functions without a sophisticated computer and a database containing cost information for the various routes." *Id*. at ¶20.

Qwest's Scivicque Declaration (Exhibit I to the Baron Declaration) says that the different OneFlex services do not all use the same call routing systems, and that supposedly none uses a database for storing billing rate parameters which is addressed for identifying communication switch paths. But "Mr. Scivicque provides no technical information or documentation upon which a person skilled in the field of VoIP telephone systems could possibly understand how calls could be routed in any one of the OneFlex systems without a computer with such a

10

database. He does not reveal how calls are routed in any one of the OneFlex systems at all. He does not state what hardware could be used to route calls instead of a computer with a database that stores cost-related information or how the calls could be routed without some means of addressing such a database." *See id.* at ¶21. As the Supreme Court has noted, summary judgment should not be granted on the basis of "conclusory affidavits". *Lujan, supra*, 497 U.S. at 888.

Moreover, the Scivique Declaration "does not address the possibility that the database and addressing means components that he insists are not present in the Qwest OneFlex systems itself are present in a part of the VoIP system provided by another entity that is connected to the portion provided by Qwest." Epstein Decl. ¶22. Even if that's the case, Qwest's non-infringement defenses still lack merit because under those circumstances, the Qwest OneFlex systems infringe the '085 patent under the theory of contributory infringement, since contributory infringement does not require that the Qwest system itself meet each element of the claims, but instead only that the overall system formed by Qwest and another provider directly infringe the claims." *Id.* at ¶¶23-24.

Contributory infringement is defined by statute:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer.

35 U.S.C. §271(c). Thus, a finding of contributory infringement requires only that the infringer sell a component of an infringing system that is not suitable for substantial non-infringing use. *Dawson Chemical Co. v. Rohm & Haas Co.,* 448 U.S. 176, 198 (1980); *Sony Corp. v. Universal Studios, Inc.,* 464 U.S. 417, 441 (1984). A contributory infringer is liable to the same extent as a

direct infringer. *Aro v. Convertible Top Rep. Co.*, 377 U.S. 476 (1964); *Glenayre v. Jackson*, 443 F.3d 851, 859 (Fed. Cir. 2006); *Semiconductor Energy v. Chi Mei*, 2007 U.S. Dist. LEXIS 44288 (N.D. Cal. 2007); *FMC v. Up-Right, Inc.*, 816 F.Supp. 1455, 1461 (N.D. Cal. 1993) ("A contributory infringer, like any joint tortfeasor, is responsible for the full extent of the harm suffered by the plaintiff. Like any other tortfeasor, defendants are liable not only for the portion of the harm they caused, but also the portion of the harm caused by the direct infringer."). *See generally* Epstein Decl. ¶¶25-26.

Accordingly, even if all of Mr. Scivicque's assertions about the components of Qwest systems that are lacking are literally true, as long as the portions of the overall system that Qwest does provide are specifically configured for use in a directly infringing VoIP telephone system, Qwest is still guilty of contributorily infringing the '085 patent claims. *Id.* at ¶26.

Regarding RTI's '769 patent cause of action, "the claims of the that patent relate to a method of updating a call rating database, which could (but does not have to) be the type of computer database used in a VoIP telephone system, such as the OneFlex systems. As can be plainly seen from the explanation above, the efficiency of a VoIP telephone system is directly related to how current the cost-related information is in the call processing computer database." *Id.* at ¶27.

For example, "since subscribers are added to and deleted from the OneFlex systems daily, if the address information for all subscriber telephones in the database is not accurate, calls will be dropped to the PSTN by the call processing computer when they could have been sent entirely within the system, adding unnecessary cost. Further, relays, routers and PSTN gateways are added, deleted and moved, and the costs associated with sending calls through those components change as that occurs. Still further, tariffs associated with PSTN call routing (local, intralatta, interlatta and long distance) change constantly." *Id.* at ¶28.

Mr. Scivicque states in his declaration that none of the OneFlex services uses a call rating device which employs any method for updating billing rate parameters. But he provides no technical information or documentation to show how the OneFlex services could operate without

12

current cost-related information upon which to base call routing decisions. *See id.* at ¶29. Thus, even if one took Mr. Scivicque's statements at face value, at best they highlight factual issues which cannot be resolved on a motion for summary judgment. In any event, RTI respectfully submits that Mr. Scivicque's statements lack credibility (*id.* at ¶30), and summary judgment should not be granted on the basis of "conclusory affidavits". *Lujan, supra,* 497 U.S. at 888.[2/]

B. Qwest Has Also Completely Mischaracterized The Re-Examination Process:

Qwest argues in the alternative that RTI should not be allowed to pursue this lawsuit because several of the claims in its '085 patent have supposedly been "rejected" by the USPTO. That is simply not the case.

First of all, RTI alleges infringement of the '769 patent as well (Amended Complaint ¶¶16-22), and that patent is not under re-examination at all. Epstein Decl. ¶7. Indeed, although the '769 patent underwent re-examination in 1999, that re-examination led to the confirmation of all of the claims of that patent. *Id.* at ¶5. Under these circumstances, there's no reason to dismiss or stay this lawsuit, since the pending '085 patent re-examination proceeding will not determine all the issues in this case. *Cognex, supra,* 2001 U.S. Dist. LEXIS 25555.

Even with regard to the '085 patent, each claim of an issued patent is presumed valid under the Patent Act, and it is Qwest's burden to establish invalidity:

> A patent shall be presumed valid. Each claim of a patent . . . shall be presumed valid independently of the validity of other claims. . . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

---

[2/] Qwest cites *OpenLCR.com, Inc. v. Rates Technology Inc.,* 112 F.Supp.2d 1223 (D. Colo. 2000) as supposedly narrowing RTI's patents (Qwest's Brief at p. 4), but that's just not accurate. That case denied a motion by RTI to dismiss a declaratory judgment and tort lawsuit, and it merely relied on the plaintiff OpenLCR.com's declarations and allegations to see if there was any evidence to support personal jurisdiction over RTI in Colorado. It made no factual findings or conclusions about the patents or otherwise. *See,* 112 F.Supp.2d at 1226 ("According to allegations in [OpenLCR.com's] Amended Complaint"); *id.* at 1228 ("According to the affidavit of [the] director of business development at OpenLCR"). Thus, there was no finding which "narrowed" RTI's patents.

35 U.S.C. §282.  Thus, although "most re-examinations involve at least the issuance of a first Office Action with a preliminary rejection of claims based upon the prior art patents or publications presented by the requester, . . . the issuance of an Office Action with a preliminary rejection is by no means a determination that the rejected claims are invalid or unenforceable." Epstein Decl. ¶35.  This is shown by the fact that the '085 patent underwent a prior re-examination, which led to the confirmation of all of the claims of that patent.  *Id.* at ¶5.

Given the above, Qwest mischaracterizes the status of the current re-examination of the claims of the '085 patent.  As a general matter, "[a] request for re-examination is not granted unless the USPTO believes that the requestor has raised a prima facie new issue relating to patentability," and so "most re-examinations involve at least . . . a preliminary rejection of claims based upon the prior art patents or publications presented by the requester."  *Id.* at ¶35. However, "[o]nce the first Office Action with a preliminary rejection is issued in a re-examination, the patent owner has an opportunity to present arguments as to why the claims are not rendered unpatentable by the prior art cited by the requestor and/or, under certain circumstances, why the cited prior art is not applicable because of an earlier date of invention of the patented invention."  *Id.* at ¶36.

In the present '085 re-examination, there has been a first Office Action with a preliminary rejection of claims 1-5, 7-16 and 18-26 of the '085 patent, and a confirmation of the patentability of claims 6 and 17.  *See* Baron Decl., Exh. "B".  But RTI filed a response to the preliminary rejection set forth in the first Office Action.  *Id.*, Exh. "C".  A review of RTI's response, publicly available on the PTO website, shows that RTI has advanced significant arguments on the merits with regard to each reference cited by the Examiner as a basis for rejection of claims under 35 U.S.C. §102 of the Patent Act (anticipation), as well as the

declarations of the inventors to demonstrate an earlier date of invention of the patented invention than the dates of the references cited as a basis of rejection of claims under 35 U.S.C. §103(a) of the Patent Act (obviousness). *See generally* Epstein Decl. ¶38.

Although Qwest claims that "RTI's response to the PTO's invalidity ruling was to file a declaration by Mr. Weinberger 'swearing behind' §102(b) prior art" (Qwest's Brief at p. 2, n.4), that is not at all the case. RTI presented arguments against each of the references cited under 35 USC §102(b) references on the merits. The declarations of Mr. Weinberger and Mr. Lee, the inventors of the subject matter of the '085 patent, were submitted to "swear back" of references cited under 35 USC §103(a) <u>only</u>.        *See* Baron Decl., Exh. "C"; Epstein Decl. at ¶39.

Thus, RTI has good grounds to believe that the patentability of all the claims of the '085 patent will be confirmed by the USPTO in the pending re-examination procedure, just as they were in the 1999 re-examination of the '085 patent (*id.* at ¶5), and there's no reason to dismiss or stay the case on this basis. *See Cognex, supra*, 2001 U.S. Dist. LEXIS 25555 (denying motion to stay patent infringement lawsuit pending a re-examination proceeding, in part because the reexamination would not determine all the issues in the case); *Alltech v. Cenzone*, 2007 U.S. Dist. LEXIS 19989 (S.D. Cal. 2007) (noting that 90% of requests for re-examination are granted).[3/]

C. <u>At The Very Least, RTI Should Be Allowed To Take Discovery</u>:

Rule 56(f) provides that "[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the

---

[3/]    Qwest also complains that RTI supposedly failed to inform Qwest about the pending '085 re-examination proceeding, but Qwest cites no authority, and RTI is not aware of any authority, that requires a plaintiff to advise a defendant in a patent infringement suit that the claims asserted are the subject of a re-examination, or of the status of the re-examination, as such information is publicly available on the USPTO website and is of public record, available for review by anyone having a computer with an Internet connection. *See* Epstein Decl. ¶¶32-34.

party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or make such other order as is just." That Rule applies with special force here, since RTI hasn't been able to take any discovery, and "[w]here ... a summary judgment motion is filed early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion fairly freely." *Burlington, supra,* 323 F.3d at 773. *Accord, Apple, supra,* 2003 WL 22928034 at p. 5 (denying dismissal motion; "The parties have not yet engaged in discovery and, at this early stage, factual determinations are not appropriate.").

Moreover, in a patent infringement case, a "plaintiff is not required to know at the time of pleading all facts to establish the claim" -- *Arrival Star, supra,* 2004 WL 2496622 at p. 4 – so RTI should be permitted to take discovery, both to develop its infringement claims and to supplement its pre-filing investigation. *Hoffman, supra,* 213 F.3d at 1364; *Cambridge, supra,* 962 F.2d at 1050. *See Loral, supra,* 911 F.Supp. at 79 (a patent infringement plaintiff can use discovery to develop its claims construction theories). *See also Mobius, supra,* Case No. 05-346 (noting that factual issues should be resolved after the close of discovery and not at the pleadings stage).

For example, RTI explained above that Qwest's OneFlex systems must have a database in which cost information relating to possible routes is stored, and must also have a means for addressing that database to obtain the information stored therein. Epstein Decl. ¶¶12-20. But in order to provide further evidence to support RTI's '769 patent infringement claim, it is necessary for RTI to understand how the database in the OneFlex systems is updated. Because the method that the OneFlex systems use to update these databases is software- or firmware-based -- and

therefore is essentially "hidden" within the system -- and RTI cannot purchase or otherwise access the whole OneFlex system, or determine how the database updating takes place by reverse engineering components that can be purchased, or by any other means, there appears to be no way that RTI can ascertain how the OneFlex systems update their databases except through discovery (*id.* at ¶43), and RTI is entitled to use discovery to obtain this information in order to develop its infringement claims and supplement its pre-filing investigation. *Hoffman, supra*, 213 F.3d at 1364; *Cambridge, supra*, 962 F.2d at 1050; *Loral, supra*, 911 F.Supp. at 79 (patent infringement plaintiff can use discovery to develop claims construction theories).

Thus, Qwest's motion should be denied on this basis alone since "[t]he parties have not yet engaged in discovery and, at this early stage, factual determinations are not appropriate" (*Apple, supra*, 2003 WL 22928034 at p. 5), or at the very least, RTI should be allowed to take any discovery, because "[w]here ... a summary judgment motion is filed early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion fairly freely." *Burlington, supra,* 323 F.3d at 773.

## IV.  QWEST'S MOTION TO STAY THIS LAWSUIT SHOULD ALSO BE DENIED

There's also no basis for a stay. RTI's '769 patent isn't the subject of a re-examination proceeding. Qwest's requested stay should be denied because the pending '085 reexamination cannot determine all the issues in this case. *Cognex, supra*, 2001 U.S. Dist. LEXIS 25555 (denying motion to stay patent infringement lawsuit pending a re-examination proceeding).

90% of requests for re-examination get granted, and delaying suit for months or years while waiting for the '085 re-examination to conclude would prejudice RTI (*Alltech, supra*, 2007 U.S. Dist. LEXIS 19989) – especially since both patents underwent prior re-examinations, which

led to the confirmation of all of their claims. Epstein Decl. ¶5. Although Qwest says RTI would suffer no prejudice because it supposedly has no products, that's not true, and in fact, RTI has offered several products and services over the years -- including RTI's "BusyBusy Phone", private pay telephones (COCOT's), table-top pay telephones, table-top telephones, and restaurant telephone products, and RTI's call rate databases, call rate updating services, and rate chip compressed call rate information services -- many of which RTI still offers in upgraded forms. Thus, RTI would in fact be prejudiced by a stay of this litigation. *Id.*

Although Qwest complains that RTI has sued other companies in the telecommunications industry for patent infringement, and settled those cases, this is no reason for granting a stay either.

Qwest finally says that allowing this lawsuit to proceed would be unduly expensive, and asserts that "RTI has been sanctioned in the past for very serious discovery abuse designed to drive up litigation costs," citing *Alcatel Internetworking, Inc. v. Rates Technology Inc.*, C.D. Cal. Case No. CV 03-9449. *See* Qwest's Brief at p. 10. But Qwest's accusation is unfounded. All the cited 2004 *Alcatel* discovery orders related to jurisdictional discovery with which RTI complied (Baron Decl., Exh. "E"), and it wasn't until 2006 that the discovery magistrate imposed a daily fine in order to get RTI to produce further responses to different discovery requests. *See id.* (Order dated April 21, 2006). What Qwest fails to tell the Court is that in 2006 Alcatel was merging with Lucent, which was covered under these same patents under a settlement agreement with RTI, so RTI had waived its claims against Alcatel pursuant to that prior settlement agreement, and didn't want to produce additional discovery while its dismissal of claims was pending. *Id.* at p. 2. The discovery magistrate ruled that he did not have authority to modify discovery dates while RTI's dismissal was pending, and basically ordered the daily fine if the

18

case wasn't eventually dismissed. *Id.* at pp. 2-3. In fact the case was dismissed soon thereafter pursuant to the relevant settlement agreements, and no sanctions were ever imposed or paid by RTI.

In other words, Qwest has provided no basis whatsoever for the relief it is seeking. There's simply no reason to grant a stay, especially since RTI's '769 patent isn't the subject of a reexamination proceeding. The pending '085 reexamination cannot determine all of the issues in this case. *Cognex, supra*, 2001 U.S. Dist. LEXIS 25555 (denying motion to stay patent infringement lawsuit pending a re-examination proceeding).

V. <u>CONCLUSION</u>

For all of the above reasons, RTI respectfully asks that Qwest's motions be denied.

Dated: October 4, 2007

Mary B. Matterer (#2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
302.888.6800
mmatterer@morrisjames.com

OF COUNSEL:

Robert L. Epstein
Epstein Drangel Bazerman & James, LLP
60 East 42nd Street, Suite 820
New York, NY 10165
212.292.5390
repstein@ipcounselors.com