IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RATES TECHNOLOGY INC.,<br><br>   Plaintiff,<br><br>  v.<br><br>QWEST COMMUNICATIONS CORPORATION AND QWEST COMMUNICATIONS INTERNATIONAL, INC.,<br><br>   Defendants | Civil Action No. 07-442 (JJF) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE,
FOR A STAY PENDING REEXAMINATION OF U.S. PATENT NO. 5,425,085**

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Melanie K. Sharp (No. 2501)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com

PROSKAUER ROSE LLP
Steven M. Bauer
Jacob K. Baron
One International Place
Boston, MA 02110-2600
(617) 526-9600

*Attorneys for Qwest Communications Corporation and
Qwest Communications International, Inc.*

Dated: October 22, 2007

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

ARGUMENT ...................................................................................................................1

    I.    RTI's Amended Complaint Is Deficient Because It Does Not Allege Sufficient Facts To Support A Claim For Infringement ..........................................................................................1

        A.    *Bell Atlantic* Requires Fact-Based Pleading ...................................2

        B.    RTI Has Not Pled Facts Showing Contributory Infringement ............................................................................................4

    II.    RTI Attempts To Correct The Deficiencies Of Its Complaint By Extensively Citing To And Quoting From The Unsupported Declaration Of Its Attorney ...................................5

    III.    The Claims of the '085 Patent Are Invalid ...............................................8

CONCLUSION ................................................................................................................9

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*Anticancer, Inc. v. Xenogen Corp.*,
    No. 05-CV-0448, 2007 WL 2345025 (S.D. Cal. Aug. 13, 2007)............................3

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) ................................................................................. 1-3, 5-6

*BMC Resources, Inc. v. Paymentech, L.P.*,
    498 F.3d 1373 (Fed. Cir. 2007) ............................................................................4

*Halo Elecs. v. Bel Fuse, Inc.*,
    No. 2:07-CV-00331, 2007 WL 2156332 (D. Nev. July 26, 2007) .........................3

*KSR Int'l. Co. v. Teleflex Inc., et al.*,
    127 S. Ct. 1727 (2007) .........................................................................................9

*McZeal v. Sprint Nextel Corp.*,
    2007 WL 2683705 (Fed. Cir. 2007).....................................................................3

*White v. Dunbar*,
    119 U.S. 47 (1886)...............................................................................................8

RTI's Amended Complaint is deficient on its face.  RTI's Opposition to Defendants' Motion To Dismiss ("Opposition") relies on the self-interested Declaration of its lead attorney, Robert Epstein, cites to no supporting evidence for any of the relevant facts other than Mr. Epstein's *opinions* on how QCC's products "must work," and then misapplies the law.  That is, in its opposition, RTI quotes and cites to the Declaration of its advocate as the sole evidence in support of its position.  Of course, attorney argument, even in the form of a declaration, is not evidence that can overcome a motion to dismiss and/or summary judgment.

In any case, QCC's OneFlex Systems simply do not work in a way that remotely resembles anything described or claimed in RTI's patents.  Thus, it is no surprise that RTI does not allege or point to actual evidence of infringement – none exists.

## INTRODUCTION

During the scheduling conference held on October 5, 2007, the Court heard arguments from both parties regarding a stay in the case.  After clarifying that Qwest was not seeking to delay trial, only that it was requesting a four month stay, this Court ordered a temporary stay until January 2008 on the Motion to Dismiss.  *See* D.I. 21, Transcript of Rule 16 Scheduling Conference held on Oct. 5, 2007 at 18:3-19:4; *Id.* at 22:4-6.  The Court also scheduled the trial for June 1, 2009 and requested that the parties submit on February 1, 2008 a statement summarizing the status of the reexamination of the '085 Patent, whereupon the Court would review the reexamination status and rule on the present motion.  *Id.* at 22:17-24:12.

## ARGUMENT

**I.    RTI's Amended Complaint Is Deficient Because
       It Does Not Allege Sufficient Facts To Support A Claim For Infringement**

Despite its numerous protestations to the contrary, RTI's Amended Complaint does not allege the facts necessary to survive under the United States Supreme Court's recent decision in

-1-

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). RTI argues that "[t]o properly plead a claim for patent infringement, all that is required is that the plaintiff allege that it is the owner of a patent, and that the defendant has committed one or more acts which infringe one or more claims of that patent." (*See* Opp. Br. at 2-3). More is required under *Bell Atlantic*. In *Bell Atlantic*, the Supreme Court tightened the pleading requirements under Fed.R.Civ.P. 8(a) by holding that the formulaic recitation of the elements of a claim is insufficient under Rule 8. *Bell Atlantic*, 127 S. Ct. at 1965. Instead, a plaintiff must allege sufficient facts to raise the claim above the speculative level. *Id.* at 1965.

      A.    *Bell Atlantic* **Requires Fact-Based Pleading**

RTI's allegation of infringement falls far short of the minimum pleading standard recently articulated in *Bell Atlantic*. A complaint that complies with Fed.R.Civ.P. 8(a) must contain enough factual matter, taken as true, to suggest that the elements of the claim are not merely conceivable, but plausible. *Bell Atlantic*, 127 S. Ct. at 1974. "When the allegations in a complaint, however true, could not raise a claim or entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *See id.* at 1966 (citations omitted). To proceed with a claim, the complaint must contain enough facts to state a claim for relief that is plausible on its face. *See id.* at 1974. A mere formulaic recitation of the elements of a cause of action does not satisfy this standard. *Id.* at 1965. Rather, the plaintiff must provide a "showing" rather than a blanket assertion. *Id.* at n.3. If the allegations are insufficient, the Court may properly dismiss the claim. *See id.* at 1974. This pleading standard is necessary, the Court explains, "lest a plaintiff with a 'largely groundless claim' be allowed to 'take up the time of a number of other people with the right to do so representing an *in terrorem* increment of the settlement value." *See id.* at 1966 (citations

omitted). In other words, "[t]he consequence of allowing [a plaintiff's] conclusory allegations to proceed is to expose the defendant to potentially extensive discovery before a motion for summary judgment may be filed." *McZeal v. Sprint Nextel Corp.*, 2007 WL 2683705, *7 (Fed. Cir. 2007) (Dyk, J. dissenting).

The *Bell Atlantic* standard has been found to apply to patent infringement disputes where the pleadings are conclusory. *Anticancer, Inc. v. Xenogen Corp.*, No. 05-CV-0448, 2007 WL 2345025 (S.D. Cal. Aug. 13, 2007) (dismissing complaint for direct and indirect patent infringement under *Bell Atlantic* when complainant fails to plead sufficient facts to demonstrate a plausible entitlement to relief); *see also Halo Elecs. v. Bel Fuse, Inc.*, No. 2:07-CV-00331, 2007 WL 2156332 (D. Nev. July 26, 2007) (not citing *Bell Atlantic* but nevertheless finding conclusory allegation of infringement insufficient).[1]

In its Opposition, RTI contends that it has properly pled a claim for patent infringement against Qwest and that therefore, this Court should deny QCC's Motion to Dismiss. RTI even purports to rely on the *Bell Atlantic* decision in support of its position. However, RTI's conclusory allegations of direct and indirect infringement do not meet the *Bell Atlantic* standard. RTI's "formulaic recitation of claim elements" alleging that "Qwest has infringed, actively induced the infringement of, and/or contributorily infringed the [Patents-in-Suit] within the United States, including without limitations by marketing, making, using, importing, selling, and/or offering to sell its OneFlex broadband voice/VoIP service . . ." showcases precisely the kind of complaint allegation *Bell Atlantic* condemned. *Bell Atlantic*, 127 S. Ct. at 1965.

---

[1] It is important to note that contrary to Plaintiff's assertions, the Court in *Bell Atlantic* did not mention, much less affirm use of the federal model form complaint for patent infringement. In fact Judge Dyk of the Court of Appeals for the Federal Circuit has questioned the viability of that form in light of the *Bell Atlantic* decision. Judge Dyk specifically noted that the form was originally drafted in 1938 and that it does not reflect the modern pleading requirements. *McZeal v. Sprint Nextel Corp.*, 2007 WL 2683705, *5-7 (Fed. Cir. 2007) (Dyk, J. dissenting).

### B. RTI Has Not Pled Facts Showing Contributory Infringement

Indeed, RTI's speculation continues into its Opposition Brief where it states that certain claim limitations *may* be carried out by some unknown *third* party thus entitling it to relief for contributory infringement. (*See* Opp. Br. at 11). Of course, this type of infringement would require the existence of a whole host of additional facts, none of which have been alleged in RTI's Amended Complaint.

To allege contributory infringement, RTI must know the other actors or, in the alternative, describe Qwest's controlling conduct – elements which are not pled in RTI's Amended Complaint. *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379 (Fed. Cir. 2007). Mr. Epstein's recitation of the contributory infringement statute completely ignores the Federal Circuit precedent set in *Paymentech*:

> Direct infringement requires a party to perform or use each and every step or element of as claimed method or product…Indirect infringement requires, as a predicate, a finding that some party amongst the accused actors has committed the entire act of direct infringement… the law imposes vicarious liability on a party for the acts of another in circumstances showing that the liable party controlled the conduct of the acting party.

*Id.* at 1378-79.

Far from making the necessary showing, RTI summarily alleges that Qwest is guilty of contributory infringement, claiming that the necessary database and addressing means, if not found in the OneFlex System, are *possibly* contained in the VoIP system of some unnamed and unknown entity that connects to the OneFlex system. *See* Epstein Decl. at ¶ 22. This hand-waving cannot support a claim even for contributory infringement. *See Paymentech*, 498 F.3d 1373 (holding summary judgment of noninfringement is proper when evidence is insufficient to

create a genuine issue of material fact as to whether the defendant controlled or directed the activity of debit networks). Moreover, such indefinite allegations suggest that RTI, having not performed an adequate pre-filing investigation, has no idea how QCC's OneFlex systems work.

II.  **RTI Attempts To Correct The Deficiencies Of Its Complaint By Extensively Citing To And Quoting From The Unsupported Declaration Of Its Attorney**

In an attempt to cure the deficiencies of its Amended Complaint, RTI, in its Opposition Brief, cites to and quotes extensively from the declaration of Robert L. Epstein, the very counsel who has entered an appearance as lead counsel on behalf of RTI in this litigation. In effect, RTI is trying to turn its advocate's arguments into "evidence" by presenting them in the form of a declaration. Such "evidence" cannot support a lawsuit. *See Bell Atlantic*, 127 S. Ct. at 1964-65 ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions . . . "). RTI's evidence amounts to nothing more than the supposition that QCC's OneFlex Systems *must* have certain features because RTI's attorney says so. *See* Epstein Decl. at ¶¶ 12-20.[2] Furthermore, RTI rests its Opposition and infringement position, not on expert opinion, but rather on Mr. Epstein's professed familiarity with the general concepts of Voice over Internet Protocol ("VoIP") telephone systems and their operation. *See* Epstein Decl. at ¶ 6. Such self-interested statements and conclusions can hardly support a good faith claim and request for relief, especially considering the terms "VoIP" or "Voice over Internet Protocol" are not mentioned anywhere in either of the Patents-In-Suit yet form the basis for Qwest's alleged infringement. (*See* Opp. Br. at 4).

---

[2]  Epstein's bias is further evidenced by the fact that he has represented RTI for twenty years. *See* Epstein Decl. at ¶ 5. During that time, Epstein himself prosecuted the Patents-In-Suit and argued their patentability to the Patent Office. *Id.* Furthermore, in addition to representing RTI before this Court, he acts as RTI's litigation counsel "in a variety of litigations involving the patents asserted." *Id.* at ¶ 6.

Exhibits A and B to the Epstein Declaration, reflecting the basis for RTI's understanding in filing the Amended Complaint, offer general speculation that is not sufficient for pleading purposes. *Bell Atlantic*, 127 S. Ct. at 1964-65. Exhibit A to the Epstein Declaration is a claim chart based on Exhibit B, a hand drawn diagram *created by RTI* of how RTI *presumes* the OneFlex system works. *See* Epstein Decl. at ¶¶ 10-11. It is notable, however, that the Epstein Declaration cites to no evidence in support of RTI's drawing in Exhibit B. Indeed, Mr. Epstein states, with respect to the '769 Patent, that he doesn't know how the OneFlex systems works and must rely on discovery to figure it out. *See* Epstein Decl. at ¶ 43.

Although RTI needed to allege a factual basis in order to bring this suit, all RTI offers is:

a) the OneFlex System *must* have a database that stores cost information (*See* Epstein Decl. at ¶ 12)

b) the OneFlex System *must* have a means for addressing that database (*Id.*)

c) the OneFlex System *must* utilize a sophisticated computer and database, since it is "not possible" to handle a high volume of calls without them (*Id.* at ¶ 20).

d) in the OneFlex System, long distance carrier routing *must* take place between the nearest PSTN gateway to the destination telephone for calls to non-subscribers (*Id.* at ¶ 19).

Epstein's characterization of the OneFlex System illustrates QCC's non-infringement. Whereas the '085 Patent describes a "device [that] generates a number sequence corresponding to a desired carrier so that the dialed call is routed through the second jack and phone line to the selected communication path and carrier" (*Id.*, Abstract), the description of the OneFlex system in the Epstein Declaration at ¶ 13, i.e., a box between *a phone and computer that converts analog signals to digital signals* which are routed over the Internet, is not described anywhere in either of the Patents-In-Suit. *See* Epstein Decl. at ¶ 13.

-6-

Epstein's declaration attempts to shoehorn the VoIP adapter and the call processing center into a single device in an attempt to show infringement where there is none. *See* Epstein Decl. at ¶ 13; Epstein Decl. Ex. A. The specification of the '085 Patent, however, contradicts this construction, describing the device, not as separate components, but being self-contained. Specifically:

> ***A housing forms an enclosure*** and has jacks mounted on the housing for interconnection to the phone line. A first jack interconnects to the phone side of the phone line and a second jack interconnects to the network side of the phone line. ***The device components are contained in the enclosure*** and includes a switch which operatively connects to the first jack for disconnecting the first phone from the network.

*See* Baron Decl., Ex. G, '085 Patent, Col. 1, ll. 59-66. Furthermore, "[t]he electronic components forming the device are mounted within the enclosure, ***typically on a circuit board***…," – and not in separate buildings. (emphasis added) *Id.* at Col. 3, ll. 40-42. The chart in Exhibit A is simply not consistent with the language of the '085 Patent.

Furthermore, certain of RTI's infringement positions are inconsistent with statements made by RTI (through Mr. Epstein) to the Patent Office during the reexamination. For example, in an attempt to show that the QCC OneFlex system has a "[d]atabase means for storing billing rate parameters…, " Mr. Epstein asserts that the OneFlex system:

> includes a call processing center which has a central database that stores (a) the IP addresses of all system phones and (b) phone-route tables which map area codes and country codes for selecting routes to the PSTN COs local to the called phone, as well as ordered "back-up" routes in case the selected route is unavailable (has insufficient available capacity) or is inoperative.

Epstein Decl., Ex A, Claim Chart at 2. However, during the re-examination, RTI and Mr. Epstein disclaimed such a system in an effort to overcome the Starplus SPX Telephone System Manual ("Vodavi") prior art reference:

> In the patented invention, the database memory does not contain a pre-determined route preference hierarchy. Instead, it contains the actual billing parameters associated with each possible route. Subsequent to the detection of the dialed number, the database is accessed and the cost rate of the call for each possible route is obtained based upon the stored billing parameters. The cost for sending the call via each route is downloaded from the database to a circuit which compares the cost rate for each route and selects a route on that basis.
>
> Thus, in the patented invention, billing parameters for the possible routes are not pre-determined route preference rankings are stored in the database. The preferred route is selected through a cost comparison that takes place only after the number is dialed, not on the basis of a pre-determined route preference hierarchy.

*See* Baron Decl., Ex. C, Supplemental Response, July 26, 2007, Remarks at p. 31. It is elementary patent law that RTI cannot twist its claims one way to argue validity and another for infringement,[3] and such acrobatics are further evidence that RTI cannot support its pro forma assertions of infringement.

### III. The Claims Of The '085 Patent Are Invalid

RTI misses the point with respect to Qwest's invalidity argument. Qwest's invalidity argument is that the patent claims are invalid in light of the prior art that has been submitted to the Patent Office in support of the reexamination. RTI seems to think Qwest's argument is that the claims are invalid *because* of the Patent Examiner's rejection – that is not the case. (*See* Opp. Br. at 13).

As explained in Qwest's Opening Brief, the relevant claims of the '085 Patent are invalid because of the prior art. The Patent Office agreed when it rejected the assertable claims of the '085 Patent. Mr. Epstein massages the severity of the reexamination decision, glossing over what he himself states – "[a] request for reexamination is not granted unless the Patent Office

---

[3] *See White v. Dunbar*, 119 U.S. 47, 51-52 (1886) ("Some persons seem to suppose that a claim in a patent is like a nose of wax, which may be turned and twisted in any direction. . . The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms.")

believes that the requestor has raised a *prima facie* new issue relating to patentability." *See* Epstein Decl. at ¶ 35. Here, the reexamination was granted for the '085 Patent *because* the Patent Office considers there to be a *prima facie* issue with the patentability of the claims of the '085 Patent. Epstein's claim that RTI "advanced significant arguments" on the merits is pure speculation on his part. *See* Epstein Decl. at ¶ 38. The Supreme Court significantly expanded obviousness in *KSR v. Teleflex* shortly before the Office Action was mailed and the revised standard for determining obviousness was not applied during the Examiner's rejections.[4] *KSR Int'l Co. v. Teleflex Inc., et al.*, 127 S. Ct. 1727 (2007). Under *KSR*, the Examiner is even more likely to find the patent claims invalid.[5] On the present record, which is the same as that before the Patent Office, the Court can hold the '085 Patent invalid.

## CONCLUSION

RTI's First Amended Complaint itself alleges that RTI has insufficient factual basis to bring this suit -- RTI says on no fewer than eight occasions that it needs "further investigation or discovery" to find evidentiary support for its claims. Such a fishing expedition wastes both the Court's and the Defendant's resources and time. Because RTI has not -- *and cannot* -- plead sufficient facts to prove its infringement claims with respect to the OneFlex Services, and because the assertable claims of the '085 Patent are invalid for all of the reasons they stand rejected by the Patent Office, QCC and QCII move (on varying bases) at this early stage under Rule 12(b)(6) to dismiss RTI's Amended Complaint.

---

[4]   The U.S. Patent & Trademark Office issued its guidelines for applying *KSR* on October 10, 2007, well after the Office Action rejecting the claims of the '085 Patent was mailed on May 21, 2007.

[5]   RTI argues that its inventor declarations "swearing behind" two references (The Jabs and Isotec references) for purposes of 35 U.S.C. §103 were effective. (*See* Opp. Br. at 15). However, both references were asserted, among others, as §102(b) references as well. That is, the two references were asserted as both §102(b) and §103 references. To the extent the references are §102(b) prior art, the declarations fail as a matter of law and provide no support for the patentability of the claims of the '085 Patent.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Melanie K. Sharp*

_____
Melanie K. Sharp (No. 2501)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com

Steven M. Bauer
Jacob K. Baron
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110-2600
(617) 526-9600
sbauer@proskauer.com

*Attorneys for Qwest Communications Corporation and Qwest Communications International, Inc.*

Dated: October 22, 2007

-10-