**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

RATES TECHNOLOGY INC.,

        *Plaintiff,*

v.

QWEST COMMUNICATIONS
CORPORATION AND QWEST
COMMUNICATIONS INTERNATIONAL
INC.,

        *Defendants.*

Civil Action No. 1:07-cv-00442-JJF

Filed: May 1, 2008

**DECLARATION OF JACOB K. BARON, ESQ. IN SUPPORT OF**
**DEFENDANTS' MOTION TO CONTINUE STAY**

I, Jacob K. Baron, Esq., do hereby depose and state the following:

1.     I am an attorney licensed to practice in the Commonwealth of Massachusetts and

the State of New York and I am an associate with the law firm Proskauer Rose LLP which

represents Defendants Qwest Communications Corporation and Qwest Communications

International Inc.

2.     I am providing this Declaration on behalf of the Defendants' Motion To Continue

Stay (D.I. 30), dated March 31, 2008.

3.     Attached hereto as Exhibit 1 is a true and correct copy of section 2272 of the

Manual of Patent Examining Procedure, Eighth Edition, Revision Six.

4.     Attached hereto as Exhibit 2 is a true and correct copy of the Report and

Recommendation from Magistrate Kathleen Tomlinson in *Rates Technology, Inc. v. Mediatrix*

*Telecom, Inc., et al.*, Case No. 05-CV-2755 (EDNY) ("*Mediatrix*"), dated March 31, 2008.

5.     Attached hereto as Exhibit 3 is a true and correct copy of the Letter from Ethan Horwitz, Esq. to the Honorable Joanna Seybert in *Mediatrix*, dated April 23, 2008.

6.     Attached hereto as Exhibit 4 is a true and correct copy of the Letter from Steven Bauer, Esq. to Robert Epstein, Esq., dated May 1, 2008.

7.     Attached hereto as Exhibit 5 is a true and correct copy of page 16 of RTI's Response to the PTO Final Office Action (the "Remarks" section), dated March 31, 2008, containing RTI's description to the PTO of Declarant Schlomo Shur (referenced in Exhibit 4).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 1, 2008

Signature: _____

Jacob K. Baron

# EXHIBIT 1

Case 1:07-cv-00442-JJF    Document 38    Filed 05/01/2008    Page 4 of 55



**United States Patent and Trademark Office**

**PATENTS**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

Patents > Search Collections > MPEP > 2272 After Final Practice [R-3] - 2200 Citation of Prior Art and Ex Parte Reexamination of Patents

Go to **MPEP - Table of Contents**

**browse before**

# 2272 After Final Practice [R-3] - 2200 Citation of Prior Art and Ex Parte Reexamination of Patents

## 2272 After Final Practice [R-3]

It is intended that prosecution before the examiner in a reexamination proceeding will be concluded with the final action. Once a final rejection that is not premature has been entered in a reexamination proceeding, the patent owner no longer has any right to unrestricted further prosecution. Consideration of amendments submitted after final rejection >and prior to, or with, the appeal< will be governed by the strict standards of **37 CFR 1.116**. >Further, consideration of amendments submitted after appeal will be governed by the strict standards of 37 CFR **41.33**.< Both the examiner and the patent owner should recognize that substantial patent rights will be at issue with no opportunity for the patent owner to refile under **37 CFR 1.53(b),** >or< 1.53(d), ** and with no opportunity to file a request for continued examination under 37 CFR **1.114**. Accordingly, both the examiner and the patent owner should identify and develop all issues prior to the final Office action, including the presentation of evidence under **37 CFR 1.131** and 1.132.

### I.  FINAL REJECTION - TIME FOR RESPONSE

The statutory period for response to a final rejection in a reexamination proceeding will normally be two (2) months. If a response to the final rejection is filed, the time period set in the final rejection continues to run. The time period is automatically extended by 1 month (in accordance with the guidelines set forth in MPEP § **2265**) if the response is the first response after the final rejection >and a notice of appeal has not yet been filed<. Any advisory Office action **>using form PTOL-467, *Ex Parte* Reexamination Advisory Action Before the Filing of an Appeal Brief, which is< issued in reply to patent owner's response after final rejection >(and prior to the filing of the notice of appeal)< will inform the patent owner of the automatic 1 month extension of time. It should be noted that the filing of any timely first response to a final rejection (even an informal response or even a response that is not signed) will automatically result in the extension of the shortened statutory period for an additional month. Note further that the patent owner is entitled to know the examiner's ruling on a timely response filed after final rejection before being required to file a notice of appeal. Notification of the examiner's ruling should reach the patent owner with sufficient time for the patent owner to consider the ruling and act on it. Accordingly, the period for response to the final rejection should be

appropriately extended in the examiner's advisory action. See *Theodore Groz & Sohne & Ernst Bechert Nadelfabrik KG v. Quigg*, 10 USPQ2d 1787 (D.D.C. 1988). The period for response may not, however, be extended to run past 6 months from the date of the final rejection.

## II.   ACTION BY EXAMINER

It should be kept in mind that a patent owner cannot, as a matter of right, amend any finally rejected claims, add new claims after a final rejection, or reinstate previously canceled claims. *>For an amendment filed after final rejection and prior to the appeal brief, a< showing under 37 CFR 1.116(b) is required and will be evaluated by the examiner for all proposed amendments after final rejection except where an amendment merely cancels claims, adopts examiner's suggestions, removes issues for appeal, or in some other way requires only a cursory review by the examiner. An amendment filed at any time after final rejection but before an appeal brief is filed, may be entered upon or after filing of an appeal provided **>:

(A) the total effect of the amendment is to cancel claims or comply with any requirement of form expressly set forth in a previous Office action, or present rejected claims in better form for consideration on appeal;

(B) for an amendment touching the merits of the patent under reexamination, the patent owner provides a showing of good and sufficient reasons why the amendment is necessary and was not earlier presented.<

The first proposed amendment after final action in a reexamination proceeding will be given sufficient consideration to determine whether it places all the claims in condition where they are patentable and/or whether the issues on appeal are reduced or simplified. Unless the proposed amendment is entered in its entirety, the examiner will briefly explain the reasons for not entering a proposed amendment. For example, if the claims as amended present a new issue requiring further consideration or search, the new issue should be identified and a brief explanation provided as to why a new search or consideration is necessary. The patent owner should be notified if certain portions of the amendment would be entered if a separate paper was filed containing only such amendment.

Any second or subsequent amendment after final will be considered only to the extent that it removes issues for appeal or puts a claim in obvious patentable condition.

Since patents undergoing reexamination cannot become abandoned and cannot be refiled, and since the holding of claims unpatentable and canceled in a certificate is absolutely final, it is appropriate that the examiner consider the feasibility of entering amendments touching the merits after final rejection or after appeal has been taken, where there is a showing why the amendments are necessary and a suitable reason is given why they were not earlier presented.

The practice of giving the patent owner a time period to supply an omission in a *bona fide* response (as set forth in MPEP § 2266.01) does **not** apply after a final Office action. If a *bona fide* response to an examiner's action is filed **after final**

**rejection** (before the expiration of the permissible response period), but through an apparent oversight or inadvertence, some point necessary to fully respond has been omitted, the examiner should **not** issue (to the patent owner) a notice of failure to fully respond. Rather, an advisory Office action (form PTOL-467) should be issued with an explanation of the omission.

Likewise, the practice of notifying the patent owner of the defects present in a submission via form PTOL-475 and setting a time period for correction of the defect (s) (as set forth in **MPEP § 2266.02**) does **not** apply after a final Office action. If a defective (informal) response to an examiner's action is filed **after final rejection** (before the expiration of the permissible response period), the examiner should **not** issue a form PTOL-475 notification to the patent owner. Rather, an advisory Office action (form PTOL-467) should be issued with an explanation of the defect (informality) being provided in the advisory action.

**browse after**



**KEY**: =online business system  💲=fees  =forms  =help  =laws/regulations  =definition (glossary)

*The **Inventors Assistance Center** is available to help you on patent matters. Send questions about USPTO programs and services to the **USPTO Contact Center (UCC)**. You can suggest USPTO webpages or material you would like featured on this section by E-mail to the* **webmaster@uspto.gov**. *While we cannot promise to accommodate all requests, your suggestions will be considered and may lead to other improvements on the website.*

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Last Modified: 12/05/2006 12:38:07

Go to **MPEP - Table of Contents**

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
RATES TECHNOLOGY INC.,

                        Plaintiff,

                                                          **REPORT AND**
          - against -                                     **RECOMMENDATION**

                                                          CV 05-2755 (JS) (AKT)

MEDIATRIX TELCOM, INC. and
MEDIA5 CORPORATION,

                        Defendants.
----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

          This case has a long and labored history of progressive disputes relating to Plaintiff's

responses to Defendants' interrogatories.  Discovery has been conducted in fits and starts going

as far back as Orders issued by then-assigned Magistrate Judge James Orenstein.  Ironically, it

was Judge Orenstein's initial Order of November 4, 2005 directing that "Plaintiff will provide

detailed answers to Defendants' first three interrogatories no later than December 19, 2005"

[DE 14] which spawned an ongoing series of debate and motion practice that inauspiciously

brings this matter to its current status.   Subsequent Orders referenced throughout this Report and

Recommendation detail both the procedural and substantive history of this action.  At this

juncture, the Court must determine whether Plaintiff has remedied its prior non-compliance with

those Orders, and, if not, what sanction(s) is appropriate.

          Defendants filed a motion for sanctions  – one of several in this contentious litigation  –

relying upon my Order of September 5, 2007 [DE 142], seeking dismissal of Plaintiff's

infringement claims, with prejudice. *See* DE 153 (filed under seal on October 10, 2007).

Defendants argue that the drastic sanction of dismissal is warranted because Plaintiff has

repeatedly flouted the Orders of this Court by failing to adequately respond to Defendants'

Interrogatory No. 3.  Defendants also moved for an award of attorney's fees "for all fees incurred

in connection with all efforts to obtain adequate interrogatory responses" [DE 153].   Plaintiff

opposed the motion on October 12, 2007 [DE 149] and on October 24, 2007,  I heard oral

argument on, among other things, the issues raised in the parties' papers.

I.      **THE SEPTEMBER 5, 2007 STATUS CONFERENCE**

_____A detailed factual and procedural history of this case is set forth in the Court's Report and

Recommendation of March 16, 2007, familiarity with which is assumed for purposes of this

motion.  In response to Defendants' July 17, 2007 request for a status conference [DE 134], and

in light of various submissions by both parties describing ongoing discovery disputes, I set a

status conference for September 5, 2007 to hear argument from both sides.  At that time, I

addressed a series of motions to compel brought by both parties concerning the claim

construction of the patents at issue here, namely, the '085 and '769 patents.

In the courtroom, just prior to taking the bench for the September 5, 2007 conference, the

parties were given copies of several decisions on certain pending motions.  The first Order [DE

139] denied Plaintiff's motion for reconsideration of my previous Order [DE 70], which granted

Defendants' motion for a protective order limiting review of confidential information by

Plaintiff's president pursuant to the provisions of the Stipulation and Order of Confidentiality

entered into by the parties.  The second Order [DE 140] granted Defendants' motion to compel

responses to its interrogatories and denied Plaintiff's motions to compel answers to

interrogatories and to produce further documents [DE 94, 113, 118].

The discussions during the conference, along with certain directives to the parties were summarized in a September 5, 2007 Civil Conference Minute Order [DE 142].The relevant portion of that Minute Order which affects Defendants' motion to be decided here states as follows:

2.    In that second Order [DE 140], I gave Plaintiff one final opportunity and directed counsel to respond to Defendants' Interrogatory No. 3 no later than September 27, 2007.  Thereafter, should Defendants believe that the Interrogatory still has not been adequately and fully responded to, I directed both parties to engage in the required good faith "meet and confer" under Local Civil Rule 37.3.  If, after having conducted that meeting, the parties are still at an impasse, I am directing the parties to adhere to the following briefing schedule:

•  Defendants to file the appropriate motion no later than October 10, 2007, with a certification that there has been compliance with Local Rule 37.3 and how that compliance was achieved.
•  Plaintiff's response is to be filed no later than October 15, 2007.
•  No replies are permitted unless permission has been requested and granted in advance to file a reply.

I am tentatively scheduling a conference for October 24, 2007 to deal with this issue if the parties have not resolved it by that time.

3.    Plaintiff's counsel maintains that he is not in possession of the information sought in this Interrogatory.  Defendants' counsel argues that all appropriate responsive information has been provided which Plaintiff requested, including the schematics of Defendants' products, has been provided to Plaintiff.  The record of counsels' arguments is contained in today's digital audio recording.  I advised the parties that I declined to hear further argument on this issue today and will await the progress of the steps outlined above.

[DE 142].   Interrogatory No. 3 is the lynchpin of this litigation.  So that the record here is clear, it is worth noting the contents of Defendants' Interrogatory No. 3:

<u>INTERROGATORY NO. 3</u>:

Separately for each claim of the Patents-in-suit that Rates contends is infringed, state the basis for that contention, including without limitation, identification on

3

an element-by-element basis of the component, structure, feature, functionality, method or process of each accused Mediatrix product that allegedly satisfies each element.

See Decl. of Ethan Horwitz in Supp. of Defs.' Mot. for Sanctions, Exhibit C at 2.[1]    The parties were still not able to resolve their issues after the September 5 Orders, so Defendants filed their motion on October 10, 2007.  Plaintiff opposed the motion on October 12, 2007 and I held the scheduled conference on October 24, 2007 to deal with the issue, including hearing lengthy oral argument from both sides.   In order to render a decision on Defendants' current motion for sanctions, it is necessary to place the September 7 Order and the parties' oral arguments in some context.  Therefore, a review of the prior Orders of the Court on this issue is warranted.

## II.    MAGISTRATE JUDGE JAMES ORENSTEIN'S PRIOR ORDERS

On October 3, 2005, Magistrate Judge James Orenstein set the initial conference in this matter for November 4, 2005 [DE 9].  Prior to the initial conference, Defendants' counsel filed a letter requesting that the Court allow "limited, focused discovery of Plaintiff while staying all other discovery until [Defendant] has had an opportunity to move for summary judgment and/or Rule 11 sanctions as appropriate based on [Plaintiff's] responses to [Defendant's] focused discovery request" [DE 11].   Defendants' counsel went on to state that this is "not a typical case in which defendants simply disagree with plaintiff's position" and that Defendants had reviewed the patents at issue in conjunction with Defendants' products and were at a loss to understand what good faith basis Plaintiff could have for asserting the patents-in-suit against Defendants.  Id.

Judge Orenstein issued an Order on November 1, 2005 directing Plaintiff to submit a

---

[1]    All subsequent references to the Declaration of Ethan Horwitz are designated "Horwitz Decl., Ex. ___."

response by November 3, 2005 to Defendants' request to limit discovery.  Plaintiff objected [DE 13].   After meeting with the parties at the initial conference, Judge Orenstein issued a subsequent Order stating, among other things, the following:

> (1) Plaintiff will provide detailed answers to the defendants' initial three interrogatories no later than December 19, 2005.  If the plaintiff seeks any form of protection against doing so (as opposed to interposing objections concurrently with providing all of the requested information), it must file a letter-motion in conformity with my individual practice rules no later than November 11, 2005.  (2) After opposing counsel has reviewed the plaintiff's responses to the interrogatories, the parties' counsel shall meet and confer and in an effort to agree to the extent possible on a joint discovery plan.  The parties are directed to submit a joint report outlining the areas of agreement and dispute with respect to discovery by January 6, 2006.

[DE 14]   On January 6, 2006, Defendants' counsel, in responding to a telephone call from Judge Orenstein's Chambers, submitted a list of continuing disputed issues to be discussed at the upcoming conference on January 10, 2006.  Number one on Defendants' list was "Plaintiff's failure to provide 'detailed answers to the defendants' initial three interrogatories'" as required by the Court's November 4, 2005 Order [DE 17].   In submitting his own list, Plaintiff's counsel stated that Plaintiff had provided "over 500 pages of detailed answers to these interrogatories" and that there was no failure to respond [DE 18].   Notwithstanding the 500 pages of production, at the January 10, 2006 status conference, Judge Orenstein ruled that

> The plaintiff will supplement its responses to the defendants' three interrogatories, as discussed on the record, by February 15, 2006.  Upon reviewing the responses, defendants' counsel will promptly identify and discuss with opposing counsel any remaining issue about the sufficiency of the response.  If the parties remain in dispute on that issue despite good-faith efforts to resolve the matter, the defendants shall promptly submit an order to compel.

[DE 19].

5

The following colloquy with the Court as reflected in the transcript of the January 10,

2006 status conference is significant:

| | |
|---|---|
| THE COURT: | And so his fear is unfounded because there won't be that reply brief – there won't be that brief in opposition that says, well, wait a minute, here's why it can't be done any other way and then go on to give an explanation that you could have given now but have not. |
| MR. HICKS: | I suppose the only way that can come up is if I think of something or if there's new discovery - - |
| THE COURT: | Right.  No, no, no. |
| MR. HICKS: | Now  - - |
| THE COURT: | *Forget the new discovery.  Forget the new discovery.  If you think of something, now is the time because that's the point of this exercise* that's taken up a lot longer than it should have and a lot more discussion that it should have. |
| MR. HICKS: | But - - if I do that in time, I'll have an explanation and either Your Honor or Judge Seybert, whoever's hearing the motion - - |
| THE COURT: | Right. |
| MR. HICKS: | - - will say  - - |
| THE COURT: | But it's not a matter, sir, of saying, well, I didn't think of it then.  I thought of it now. |
| MR. HICKS: | I  probably wouldn't make that argument, Your Honor, because I don't think that would go very far. |
| THE COURT: | No, it won't.  And that's why I need to be able to say, look.  I've thought about it.  I gave it a lot of good faith thought before filing the complaint.  Here's the theory I'm going with.  And if it's just - - it can't be done any other way, yes, you've either given enough information here to show why you think it can't be done any other way.  Or you're acknowledging that you're stuck with - - well, because it just can't.  And if he does come up with something and says here is another way that it does happen, you're not going to say, well, but that is the same way - - however, I guess you can do |

6

that, but you know, *you're not going to come up with a new theory of how it can't come up any other way - - can't be done any other way - - to accommodate what he's told you about his product because you know about his product already.*

MR. HICKS:    One, I agree.  Two, if for some reason I think of something I will need to give Your Honor a good explanation because Your Honor either accepts or doesn't.

THE COURT:    All right.  We're going to move on.  You're going to provide, you know, *with respect to each - - you know, claim of infringement in each claim within the patent that you say was infringed you're going to say, here's the application that infringes it and how.  And if the answer is - - and how is because it can't be done any other way you'll state that clearly.*

                              *    *    *

MR. HORWITZ:    Your Honor, we do that on an element by element basis because the claim covers a whole bunch of things.  What he's saying - - what he's gonna say is, here are all your applications.  Between all of them, the infringement is no other way.  What I want to know, and what I've asked for in the interrogatory - - *and Your Honor ordered detailed answers.  This claim element - - what  - - where is it found or if you think that this - -*

THE COURT:    I don't think there's any - - *Mr. Horwitz, I don't think there's any disagreement about that.*

MR. HORWITZ:    Right - -

THE COURT:    *That's what we've been - - talked about all along.*

MR. HORWITZ:    *And on an element by element basis.*

THE COURT:    *Yes, of course.*

MR. HICKS:    That's what I said.  That's – I believe these answers do that.  *I'm happy to explain the various product applications.  I have no problem doing that and to the extent the product applications require an element by element analysis which is different from what's in here, I'll be happy to provide it, but I've already done that.*

7

THE COURT:        All right.

[DE 22 at 38-41] (emphasis supplied).  It is clear from the transcript as well as Judge Orenstein's

Order of January 10, 2006 that the Court found Plaintiff's responses to be inadequate and

directed Plaintiff to supplement its responses to Defendants' three interrogatories with an

element-by-element analysis regarding the limitation of the claims.  It is also clear that Judge

Orenstein expected Plaintiff to complete the analysis without any new discovery from

Defendants since it already had all of Defendants' necessary product information.

On February 27, 2006, the date set by Judge Orenstein for the parties to submit a joint

discovery plan, Defendants' counsel notified the Court (1) that the parties could not come to an

agreement on a joint discovery plan; (2) that Plaintiff's supplemental responses to Defendants'

interrogatories failed to satisfy the Court's Order that Plaintiff respond to Interrogatory No. 3 on

an element by element basis but provided only "broad general statements, divorced from the

claim language and without any reference to any of the specifics of the accused products;" and

(3) that in light of Plaintiff's repeated failure to provide adequate responses to the initial

interrogatories, Defendants ask that the status quo be maintained while Defendants move to

dismiss the Complaint and the parties await a decision from the Court.  Defendants also

suggested a briefing schedule [DE 23].   Plaintiff responded, noting that it had provided

supplemental responses and had complied with the January 10, 2006 Order.  Specifically, counsel

stated that "RTI has provided all the responsive information which it believes it has at this

time . . . ."  Plaintiff also asked that a settlement conference be scheduled [DE 24].

Five days after Plaintiff's letter was filed, Defendants filed a draft "Order to Compel" to

Judge Orenstein, in compliance with the Court's January 10 directive, with a cover letter stating

8

that after receiving Plaintiff's supplemental responses, Defendants had identified examples of specific claim elements as to which Plaintiff had failed to respond.  According to Defendants, "Rates refused to discuss the issues, asserting instead that it fully supplemented its answers and that its answers are in 'general terms'" [DE 25].   Plaintiff responded that the draft order to compel should be rejected, that Plaintiff did not believe it had further responsive information at that time, that discovery should proceed, and that a settlement conference should be scheduled [DE 26].

III.     **MAGISTRATE JUDGE TOMLINSON'S PRE-SEPTEMBER 5, 2007 ORDERS**

   A.     *The March 16, 2006 Status Conference*

The instant case was assigned to me in late February 2006.  On March 16, 2006, I met with the parties for a conference that had been previously scheduled by Magistrate Judge Orenstein.  After hearing from both sides, I entered a Case Management and Scheduling Order and also entered a Civil Conference Minute Order summarizing my discussions with the parties that day.  At that time, I ruled that the Defendants' application to compel and the proposed order would be held in abeyance pending my receipt by March 17 of Plaintiff's initial responses to Defendants' interrogatories.  I advised the parties that I would review these materials, along with the prior Orders of Judge Orenstein, and would then inform them of my decision.  Among other things, I further directed that (1) Defendants serve their responses to Plaintiff's discovery demands no later than April 17, 2006; (2) Plaintiff then serve any objections in writing within ten days; (3) any unresolved objections be brought to my attention on an expedited basis; (4) the parties contact Judge Seybert's Chambers regarding any proposed *Markman* hearing; and (5) no

stay of discovery was in effect. *See* March 17, 2006 Civil Conference Minute Order.  I also deferred the request for a settlement conference.

On April 7, 2006, in anticipation of serving their responses to Plaintiff's discovery demands, Defendants moved for a protective order, seeking to restrict the individuals who could view these documents to "outside counsel eyes only" [DE 29].   Plaintiff's counsel agreed to treat the anticipated April 17, 2006 production by Defendants as "outside counsel's eyes only" until a protective order was entered by the Court [DE 30].  Pursuant to my March 17, 2006 Order, Defendants then made application to Judge Seybert on April 28, 2006, asking for a conference to address the proposed *Markman* hearing [DE 32].    Plaintiff opposed setting the *Markman* hearing on the grounds that it was premature [DE 33].

On May 10, 2006, Defendants filed another motion to compel seeking to have Plaintiff answer interrogatories and produce documents.  *See* DE 35.  Defendants stated they had served their first set of document requests and second set of interrogatories on March 17, 2006 and Plaintiff served "preliminary" responses to the document requests which did not agree to produce a single document.  *Id*.  Specifically, Defendants asserted that Plaintiff had not "substantively responded to a single one of the five interrogatories or 33 document requests, has not produced a single document and has not even provided a date by which it intends to do so."  *Id*. Defendants therefore moved to compel Plaintiff to provide complete, substantive interrogatory responses and complete document responses to each request by May 19, 2006.  Plaintiff opposed the motion, contending that Defendants' own discovery responses were lacking and asking the Court to deny the motion, to enter a protective order as attached to the opposition papers (since

10

the parties could not agree on terms of a protective order), and to direct the parties to meet and confer under Local Civil Rule 37.3  *See* DE 36.

The very next day, May 16, 2006, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 11 and as a discovery sanction.  Plaintiff opposed the motion and requested oral argument.  *See* DE 45.  On June 1, 2006, the parties appeared before Judge Seybert.  At that time, Judge Seybert referred the Rule 11 motion to me as well as Defendants' application to schedule a *Markman* hearing [DE 53].  After the motion was fully briefed, I agreed to hear oral argument at the previously scheduled July 2006 conference.

### B.    *The July 20, 2006 Status Conference*

At the July 20, 2006 conference, I addressed the following issues with the parties: (1) Defendants' motion to compel Plaintiff to provide supplemental responses to three of Defendants' initial interrogatories (previously held in abeyance as set forth in my March 17, 2006 Order) [DE 25]; (2) Defendants' motion for a protective order [DE 29] to protect its confidential development and commercial information; (3) Defendants' second motion to compel [DE 35] Plaintiff to provide substantive responses to the outstanding interrogatories and to produce the documents requested in Defendants' initial document demands; and (4) Plaintiff's motion for a protective order [DE 41].  At the conclusion of the conference, I compiled my rulings and directives in an extensive Civil Conference Minute Order[2] [DE 60].

---

[2]     It should be noted that on April 17, 2006, Defendants produced extensive discovery to Plaintiff, including thousands of pages of technical drawings and other documents which Defendants claim fully explain "the structure and operation of each of Mediatrix's accused products."

During the conference, I reviewed Magistrate Judge Orenstein's previous Orders, and particularly the obligation placed on Plaintiff to identify, within the context of the claims of the respective patents, how each product infringes each claim on an element-by-element basis within each claim. *See* DE 60 at 1-2. After having reviewed the record and transcripts of prior appearances and hearing oral argument from the parties, I determined that Plaintiff had not complied with the prior orders, stating that "I find Plaintiff's position to be contradictory to the previous directives issued by the Court. . ." *Id*. at 2. I granted the motion to compel with respect to Defendants' Interrogatory No. 2.

With regard to Interrogatory No. 3, Plaintiff had been directed by Judge Orenstein to supplement its responses. In reviewing the supplemental response and after hearing from the parties, I found as follows:

> On February 15, 2006, Plaintiff served its supplemental responses as directed by the Court. Aside from repeating much of the information submitted as its December 15, 2005 response to Interrogatory No. 3, Plaintiff provides certain excerpts from the January 10, 2005 conference transcript. Plaintiff's counsel relies upon these excerpts as the basis for contending that Plaintiff has complied with Magistrate Judge Orenstein's previous order to supplement the interrogatory responses. Having heard argument from all parties as to this issue, I find that Plaintiff has not complied with the Court's previous orders since Plaintiff (1) has not provided the required element-by-element analysis and has (2) failed to identify a) where each element is allegedly found in the accused products or services, or b) does not currently know but believes there is only one way of satisfying that particular element.

DE 60 at 3. After providing Plaintiff's counsel with various references to applicable case law, I granted Defendants' motion to compel and directed Plaintiff to properly supplement its responses to Interrogatories 2 and 3 no later than August 28, 2006. In doing so, I cautioned Plaintiff's counsel as follows:

> It should be noted that this is Plaintiff's <u>final</u> opportunity to comply with this Court's orders and the rules of discovery. Should Plaintiff fail to do so, the Court will fashion an appropriate remedy.

DE 60 at 4 (emphasis in original).

> On August 31, 2006, Plaintiff moved for leave to file a First Amended Complaint,

> which amended pleading states that several of its allegations and other factual contentions are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, as specifically allowed by Fed. R. Civ. P. (b)(3).

> RTI voluntarily withdrew the claims alleged in its original complaint under Fed. R. Civ. P. 11(c)(1)(A), and it intends to obtain further evidentiary support through discovery, in order to develop its patent infringement claims and supplement its pre-filing investigation, as allowed by governing Federal Circuit law.

DE 74 at 1-2.

Five days later, with the August 28, 2006 deadline having passed, Defendants again moved before Judge Seybert to dismiss the Complaint pursuant to Rule 11 [DE 78]. A week later, Defendants filed a letter motion for sanctions based upon Plaintiff's alleged failure to comply with the Court's July 24, 2006 Order regarding the interrogatory responses [DE 93]. Within two days, Plaintiff filed a motion to compel Defendant to provide answers to interrogatories and to produce further documents [DE 94]. On September 14, 2006, Judge Seybert referred to me for a Report and Recommendation Plaintiff's motion for leave to file an amended complaint and Defendants' motion to dismiss under Rule 11 [DE 95]. Thereafter, Plaintiff filed a motion to compel further responses to interrogatories [DE 118] and Defendants filed a motion to compel production of documents [DE 124]

In the Report and Recommendation to Judge Seybert, I recommended that (1) Defendants' two motions to dismiss pursuant to Rule 11 be denied, (2) the motion for an immediate *Markman* hearing be denied, (3) Plaintiff's motion to amend be granted, and the parties' motions for costs and attorney's fees be denied [DE 122]. Both parties filed objections. After reviewing those objections, Judge Seybert adopted the Report and Recommendation in its entirety. *See* DE 128. Plaintiff filed its Amended Complaint on July 6, 2007. Shortly thereafter, Defendants requested a status conference, which Plaintiff opposed. I granted Defendants' motion and set the status conference for September 5, 2007. Defendants filed an Amended Answer with Counterclaim on August 2, 2007.

IV. __THE ADDITIONAL ORDERS OF SEPTEMBER 5, 2007__

Aside from the Civil Conference Minute Order of September 5, 2007, which was discussed above in Section I, I issued several other rulings that day. In particular, Defendants had moved for sanctions based on Plaintiff's failure to comply with the Court's July 24, 2006 Order. Defendants' motion sought "dismissal of this action with prejudice and attorney fees" based upon Plaintiff's failure to provide a response to Defendants' Interrogatory No. 3. That interrogatory has been the subject of previous motion practice and calls for Plaintiff to identify on an "element-by-element basis" the "component, structure, feature, functionality, method or process of each accused Mediatrix product that allegedly satisfies each element." [DE 93] In opposition, Plaintiff argued that it cannot produce information which it does not have and asserted that it has "no further responsive information at this time." [DE 99] Plaintiff added that "the main reason RTI doesn't have further information is that Mediatrix won't meaningfully respond to RTI's own discovery (as detailed by RTI's pending motion to compel Mediatrix to

14

answer interrogatories and produce documents)." *Id.* The motion to compel referred to by

Plaintiff — DE 94 — sought Defendants' response to Plaintiff's Interrogatory Nos. 2 and 4

which, curiously, also sought "an element-by-element analysis of RTI's infringement claims."

Specifically, Plaintiff argued that

> Mediatrix should be ordered, separately for each claim limitation of
> the Patents-in-suit that it identified in its original responses to RTI's
> Interrogatories Nos. 2 and 4, to state the basis for its contention that
> each of its accused products and services, and/or the telephone system
> to which they are connected, fails to meet such claim limitations,
> including by identifying on an element-by-element basis why they
> allegedly fail to meet such elements of those claim limitations.

DE 94. Plaintiff maintained that it was entitled to obtain this information through discovery in

order to develop its infringements claims and supplement its pre-filing investigation. *Id.* In

opposition, Defendants argued that Plaintiff is seeking to have it "disprove infringement," which

is not the appropriate standard. Defendants further asserted that it is impossible to answer "why"

various claim elements are not present in the accused Mediatrix products because, as Defendants'

Answer states, Defendants' product physically lack the elements [DE 100].

Having considered the arguments of counsel, I conditionally granted Defendants' motion

for sanctions, provided that Plaintiff did not fully and adequately respond to Interrogatory No. 3

by September 27, 2007. In doing so, I made the following observation:

> Although Plaintiff repeats caselaw for the proposition that it is
> entitled to take discovery to support its claims, this action is well past
> the pleading stage and **Plaintiff's ongoing history of noncompliance
> here borders on a finding that such action is willful**. *See, e.g.,
> Refac Int'l, Ltd.*, 921 F.2d at 155 . . . I find the best way to determine
> which claims are in dispute here is to have the party asserting
> infringement provide its interpretations to the alleged infringer so that
> the Defendant can determine which terms they agree on and which

they do not. This is basic claim construction which Plaintiff should be able to provide at this juncture.

Consequently, in light of the above information and the prior Orders of this Court, I am **giving Plaintiff one final opportunity to respond to Defendants' Interrogatory No. 3**. Plaintiff is directed to do so no later than September 27, 2007. This final opportunity is being given so as not to prejudice the Plaintiff's rights in this action. **I am cautioning Plaintiff, however, that this is indeed its last opportunity to comply with the directives of this Court and Plaintiff proceeds at its own peril.** If a full and complete response is not provided to Defendants with respect to Interrogatory No. 3, **I shall recommend to District Judge Seybert that this matter be dismissed** pursuant to Fed. R. Civ. P. 37(b)(2)C).

DE 140 at 8-9 (emphasis added).   Plaintiff's motions to compel [DE 94, 118] were denied.

## V.    THE OCTOBER 24, 2007 HEARING

At the outset of the October 24 proceeding, I reviewed the September 5, 2007 Order so that the parties could make their arguments regarding their compliance with the terms of that Order.  At the September 5 conference, Plaintiff's patent counsel, Robert Epstein, stated that in order to develop a meaningful claim chart regarding the '769 patent in response to the now familiar Interrogatory No. 3, it was necessary for Plaintiff to understand how the database in the Mediatrix VoIP system is updated.  Without an answer to that question, Plaintiff asserted it could not give a legitimate element-by-element claim analysis.  In response, Defendants' counsel reiterated that the '769 patent has nothing to do with voiceover internet and that the database Plaintiff speaks of is the database about the cost of the call, having nothing to do with the element-by-element analysis of the claim limitation.  Having heard from the parties, I found Plaintiff's response still unacceptable.

16

The hearing continued for a substantial period of time.    I reminded Plaintiff of my previous cautionary words that "if a full and complete response was not provided to the Defendants with respect to Interrogatory 3, I shall recommend to District Judge Seybert that the matter be dismissed pursuant to Rule 37(b)(2)c)."  Tr. at 2.[3]   As part of the September 5 Order, I had also directed the parties to meet and confer and I gave Plaintiff one final opportunity to respond to Defendants' Interrogatory No. 3 no later than September 27.

On September 27, 2007, Plaintiff served Defendants with its "Amended and Supplemental Response to Defendants' First Set of Interrogatories to Rates Technology, Inc." Horwitz Decl., Ex. C.  The document provides an amended and supplemental response to Interrogatory No. 3.  In that response, Plaintiff states that claim 1 of the '085 patent is infringed by four Mediatrix models.  The response then refers to an attached claim chart "A" and a handwritten diagram which purports to identify, "on an element-by-element basis, the component, structure, feature, functionality, method or process of each such Mediatrix product that satisfies each element."  *Id.* at 3.  The response then references a claim chart "B" and diagram which allegedly does the same thing with regard to other Mediatrix produce models and IP routers.  *Id.*

During the October 24 hearing, I raised a number of questions with both sides concerning various issues raised in their motion papers.  In particular, the parties made reference to a portion of Exhibit A attached to Defendants' motion for sanctions which contained an e-mail correspondence from Plaintiff's counsel to Defendants' counsel, dated September 27, 2007.  In that e-mail, Plaintiff's counsel stated:

---

[3]       All references to the record of the October 24, 2007 hearing are cited as "Tr. at ___."

> RTI currently contends that Claim 1 of the '085 patent is infringed by
> Mediatrix's Model Nos. 1102, 1004, 1124, and 2102 ATA's; Model Nos.
> 2400, 2500, and 2600 IP routers; and Model Nos. 1204, 1400, 1500, and
> 1600 gateways, as detailed by the claim charts which were previously
> supplied to you.
>
> With regard to RTI's '769 patent, RTI does not contend that Mediatrix's
> products infringe any particular claim of that patent at this time.

Horwitz Decl., Ex. A.  Plaintiff did serve an amended response to Interrogatory No. 3 in which

Plaintiff provided an ITSP claim chart and an IP PBX claim chart, presumably for claim 1 of the

'085 patent.  Plaintiff's position as reflected in the e-mail  regarding the '769 patent was that it

did not currently contend that Defendants infringed any particular claim of that patent, but

nonetheless infringed the patent as a whole.

Defendants' counsel, who had assumed that Plaintiff was abandoning its infringement

claims regarding the '769 patent, began his argument at the hearing by noting that he had never

heard anyone ever claim that one could infringe a patent without infringing a claim.  Tr. at 8.   He

went on to note that this was the fifth time the parties were before the Court on this issue, that

Defendants had produced substantial documentation to Plaintiff regarding Defendants' products,

and that Plaintiff, with its expert, had the opportunity to take the Mediatrix products apart and to

access online all of the manuals to observe how the products work.  Despite Defendants having

provided all of this information, counsel argued, Plaintiff has still not complied with the Court's

previous Orders.  Defendant's counsel explained that

> We have been at this litigation for two years.  For two years we have
> basically asked one question of them.  That question is what is the
> infringement all about?  Tell me what it is you think I am doing?
> They cannot answer that basic question.  We've asked it.  There
> have been four orders.  This is the fifth time we're in front of a court
> asking them for - - with proper answers.  We haven't gotten it.

18

> The time has really come to say enough is enough. You've come up with a theory that is unheard of. . . . And as to that one claim, that one claim is not properly analyzed. It's not properly analyzed for a whole bunch of reasons, one of which is they have claimed direct infringement of a number of our products. The claim analysis is not a direct infringement claim analysis. It does not answer the interrogatory. You said we infringed directly. Why do you claim that on an element by element basis? The answer does not have it.
>
> . . . Whichever way you look at it, these interrogatory answers fail. . . . The interrogatory says for each product give us an element by element analysis of why you think it infringed. There is no direct infringement analysis in the claim analysis that they've given us. It has failed yet again after four orders of the Court to properly answer. It has failed yet again. After two orders of the Court saying this is the last chance I am giving you, it has failed yet again. . . .

Tr. I at 12-13, 16-17.

In opposing the sanctions motion, Plaintiff's counsel advised the Court that Plaintiff had not abandoned its '769 patent infringement claim,

> nor has it argued that it "never" has to identify infringed claims within that patent. RTI is instead explaining that it doesn't have sufficient evidence at this time to provide an element-by-element analysis of an alleged infringement with regard to particular claims within the '769 patent . . .

DE 149. Plaintiff confirmed this position at the October 24 hearing. Tr. at 22, 23. In addition, with regard to the '085 patent, Plaintiff now contended that only claim 1 is infringed, contrary to its prior position that approximately 20 other claims were also infringed. Horwitz Decl., Ex. A; DE 149 at 2.

Looking to the "claim charts" produced by Plaintiff's expert, Defendants point out that the claim analysis is not a direct infringement analysis and does not answer the interrogatory, thereby violating the Court's prior Orders. Tr. at 13-14, 17. Plaintiff for all intents and purposes concedes this fact:

I gave an initial analysis which was in large part prepared by Mr. Epstein which tried to analyze and respond to it. And he [Defendants' counsel] said that wasn't any good. And your Honor said it didn't answer the question. So it's not that we have withdrawn the analysis. We've tried to come up with different ways of answering the question with what we've had because we have been up front saying we can't give a complete answer.

Tr. at 20.

With regard to its continuing failure to provide an appropriate response to Interrogatory No. 3, Plaintiff provided the following explanation:

The problem we then ran into is interrogatory number 3, asks us to give a complete analysis and we can't do that for all of those claims. So when on September 5 your Honor said give the complete analysis, what we did was not say we're not infringing, we're not claiming that no claim of the '769 is infringed, we've up front amended our interrogatory responses to say we don't know which claim is infringed and we don't have sufficient information to do an element by element analysis for any of the claims in '769 and therefore, we're amending our interrogatory response to say we are not contending that any particular claim infringes but we believe that the products infringe the patent and we reserve the right to amend this answer when we get the discovery we need from them. . . .

So, we're very up front about that. It's not like we've ever been trying to hide the ball. We tried to say, okay, these are the claims we think are infringed but we can't give an element by element analysis. So, finally we amended the answer to say fine, we can't give an element by element, so we're not contending that anyone – particular ones infringed. But we're not abandoning the patent finding.

Tr. at 22, 23.

Relying upon this reasoning, Plaintiff's counsel argued that there can be no sanctions – and especially dismissal sanctions – because there has to be clear and convincing evidence of willful and intentional failure to obey the Court's Order, which Plaintiff's counsel says is missing here. Tr. at 28; DE 149. According to Plaintiff, RTI did its best to respond to Interrogatory No. 3 and "said under oath that it provided the best answer it can, and has no other responsive

20

information." DE 149.   Plaintiff claims this ends its good faith responsibility and asserts

"[t]hat's the end of Mediatrix's <u>discovery</u> motion, since Rule 33(a) just requires a respondent to

'furnish such information as is available to the party,' and RTI doesn't need to produce

information which it does not have." *Id.*   Based on Mr. Epstein's analysis, Plaintiff argues,

"these answers are good enough.  They're certainly the best we can do and that should be the end

of it as a discovery motion."  Tr. at 29.

Defendants' counsel responded that the "system" which Plaintiff's expert continues to

reference and describe is not identifiable as a source of direct infringement.  Counsel noted

"[t]his is our product installed somewhere else.  Where?  Who brought this product and installed

it in this other system?"  Tr. at 39.  Moreover, Defendants' counsel pointed to the database

information listed on the expert's hand-written diagram and emphasized that the database

appearing there does not exist in Mediatrix's products.  *Id.*   In the one claim that Plaintiff

answered, Defendants argue, it could not point out where in the Mediatrix product it infringes.

Rather, "they point to some imaginary system and say I built this system and this system

infringes."  *Id.*  As to Plaintiff's argument that they need to know more about the database,

Defendants assert that it is not Mediatrix's database.  Tr. at 40.

Defendants' counsel maintained that it was not arguing Plaintiff needed actual "proof" of

infringement at this juncture.  In doing so, counsel made the following significant observation:

> . . . we're not asking them for every element of proof as to why their interrogatory
> answer is correct.  The difference between an interrogatory answer that we've
> asked is what do you contend?  Why do you claim we infringe?  We didn't ask
> an interrogatory that said give me every element of proof that you are going to
> have at trial to support your contention. . . at least tell me where it is so I
> understand what you're talking about.  They can't even point to where it is. . . .

> . . . The proof can come later. I am not interested in why they think it's there. I just want to know where they think it is. They don't have to prove it to me. They just have to tell me where they think it is. That's the box that they're trying to put your Honor in where your Honor can truthfully say do I - - how can they be expected to prove it, you haven't been through discovery. Your Honor, we're not asking them to prove it.

Tr. at 42-43, 46-47.

Plaintiff's view of what was required of it in responding to Interrogatory No. 3 is obviously different. Plaintiff argued that the only question before the Court was whether Plaintiff answered Interrogatory No. 3 "without intentionally . . . withholding information and is there clear evidence of such willful or intentional withholding." Tr. at 61. Plaintiff contends that it "did its best and there's no evidence of withholding, let alone clear and convincing and therefore, [I] think that the pending motion before your Honor should be denied." *Id.* Turning to the discovery rules applicable to these circumstances, and utilizing the principles set forth in relevant case law, the Court must now determine whether Plaintiff's assessment is accurate and sufficient to warrant denial of Defendants' motion for sanctions.

## VI.    DISCUSSION

Rule 37 of the Federal Rules of Civil Procedure provides in pertinent part as follows:

**(b)    Failure to Comply With Order.** . . .

**(2)  Sanctions by Court in Which Action is Pending**.

> If a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

*         *         *

22

> **(C)**  An order striking out pleadings or parts thereof . . .
> or dismissing the action or proceeding or any part thereof, or
> rendering a judgment by default against the disobedient party...

Fed. R. Civ. P. 37(b)(2)(C).  Sanctions under Rule 37 are intended to serve three purposes:

"[f]irst, they insure that a party will not benefit from its own failure to comply.  Second, they are

specific deterrents and seek to obtain compliance with the particular order issued.  Third, they are

intended to serve general deterrent effect on the case at hand and on other litigation. . . ."  *Update*

*Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988) (citations omitted).

Whether to impose the sanctions provided in Rule 37 lies within the broad discretion of

the district court.  *See, e.g., Corp. of Lloyd's v. Lloyd's U.S.*, 831 F.2d 33, 36 (2d Cir. 1987).

"[D]ismissal with prejudice is a harsh remedy to be used only in extreme situations, and then

only when a court finds willfulness, bad faith, or any fault on the part of the [sanctioned party]."

*Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990).  As the Supreme Court

has noted, however, "the most severe in the spectrum of sanctions provided by statute or rule

must be available to the district court in appropriate cases, not merely to penalize those whose

conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to

such conduct in the absence of such a deterrent." *National Hockey League v. Metro. Hockey*

*Club, Inc.*, 427 U.S. 639, 643 (1976); *see also Update Art, Inc.*, 843 F.2d at 73 (affirming

magistrate judge's decision to award summary judgment against party who failed to comply with

discovery orders, noting "[w]e wish to emphasize the importance we place on a party's

compliance with discovery orders. Such compliance is necessary to the integrity of our judicial

process. A party who flouts such orders does so at his peril. If one suggests that our decision

today is strong medicine, that is precisely what it is intended to be.").

23

In choosing the appropriate sanction, courts consider a variety of factors, including "(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance; and (5) whether the non-compliant party had been warned of the consequences of his noncompliance." *Richardson v. N.Y. City Health & Hospitals Corp*., No. 05-CV-6278, 2007 WL 2597639, at *6 (S.D.N.Y. 2007). No one factor is dispositive and "sanctions must be weighed in light of the full record in the case." *Cine Forty-Second St. Theatre v. Allied Artists*, 602 F.2d 1062, 1068 (2d Cir. 1979) (citing *Nat'l Hockey League*, 427 U.S. at 642). The Court now examines in turn each of the factors set forth in *Richardson* as applied to this case.

### A.     Willfulness/Reason for Non-Compliance

The failure to comply with discovery orders will be deemed willful "when the court's orders have been clear, when the party has understood them and when the party's non-compliance is not due to factors beyond the party's control." *Ocello v. City of New York*, No. CV-05-3725, 2008 WL 789857, at *6 (E.D.N.Y. Mar. 21, 2008) (quoting *Baba v. Japan Travel Bureau Int'l, Inc.* 165 F.R.D. 398, 402-03 (S.D.N.Y. 1996), *aff'd,* 111 F.3d 2 (2d Cir. 1997)).

Notwithstanding its ongoing record of non-compliance with the Court's Orders, Plaintiff nevertheless maintains that dismissal is not warranted because its failure to respond is not "willful" or in "bad faith" – simply put, Plaintiff states that it cannot answer the interrogatories without first obtaining from Defendants more specific information. Defendants, on the other hand, claim that this argument rings hollow and is simply part of a pattern of utter non-responsiveness to Defendants and to this Court. Defendants reaffirm that all relevant information has been provided to Plaintiff's counsel. They argue that this continuing and blatant failure to

24

respond is indeed willful and in bad faith. Plaintiff has done little to refute these arguments in any convincing way. Despite prior Orders and warnings, Plaintiff continues to engage in an exercise in creativity to try to find new words or new ways to circumvent the Court's unambiguous directives. The history of Plaintiff's circular conduct and evasion of its discovery obligations in this litigation is well-documented and demonstrates the very willfulness Plaintiff seeks to repudiate. As of this date, having reviewed the numerous submissions to the Court on these issues, I find that Plaintiff has again failed to comply with the legitimate Orders of this Court.

Plaintiff *again* recycles previously proffered arguments and case law for the proposition that it is entitled to take discovery to support its claims – in other words, Plaintiff wants to gather information from Defendants so it can provide the required element-by-element analysis (or preferably have Defendants do the analysis for it) which it should have performed *before* it commenced this litigation. The Court previously made note of this cart-before-the-horse approach of Plaintiff's counsel in the September 5, 2007 Order [DE 140] where it stated that the ongoing failure to provide an element-by-element analysis of the claim limitation after repeated opportunities to provide such analysis bordered on willfulness. Plaintiff's continued noncompliance since that date presses the unequivocal conclusion that such action *is* willful. *See, e.g.*, *Refac Int'l, Ltd.*, 921 F.2d at 1255 (holding that the extent of plaintiff's noncompliance supports a willfulness finding and plaintiff's "inability to spell out a proper basis for charging infringement more than a year after bringing suit highlights its willfulness."). The refrain by Plaintiff's counsel here (that Plaintiff cannot give what it does not have) makes Plaintiff RTI no different from the plaintiff in *Refac* – Plaintiff's inability to spell out an appropriate basis for

25

charging Defendants with infringement nearly three years into this litigation indeed highlights Plaintiff's willfulness.

Much like the plaintiff in *Industrial Electronics Private, Limited v. Bendix Corporation*, No. 85-CV-2433, 1989 WL 76004 (S.D.N.Y. July 6, 1989), Plaintiff's latest response here to Interrogatory No. 3 bears little resemblance to an acceptable answer. In *Bendix Corp.*, the court considered a comparable motion by a defendant to dismiss a breach of contract action because the plaintiff failed to answer satisfactorily certain interrogatories. *Id.* at *1. After failing to respond at all to defendant's interrogatories, the court directed plaintiff to respond by a deadline the judge imposed. *Id.* The court then issued a subsequent order setting forth the deficiencies in plaintiff's responses and directing plaintiff to serve acceptable answers by a newly imposed deadline. *Id.* Plaintiff did not respond until defendant filed a motion for a default judgment, at which point plaintiff filed an affirmation with accompanying documents. *Id.* In reviewing plaintiff's submission, the court stated that the "melange of documents accompanying the affirmation bears little resemblance to acceptable answers." *Id.*

Finding that "[t]he persistent uncooperative posture of plaintiff evidences to the Court willful neglect and/or bad faith," *id.* at *2, Judge Keenan dismissed the action in *Bendix Corp.* and went on to observe that

> [t]he requested answers would address the gravamen of plaintiff's grievances against the defendant. These answers lacking, the claims have not been clearly articulated or substantiated. Despite numerous attempts by the defendant and the Court, plaintiff still is not forthcoming with crucial information. A case which was begun in 1985 four years later still remains suspended in the limbo of discovery. Such extreme delay cannot be countenanced.

*Id.* The circumstances now before this Court require a similar outcome. "Rule 37 strictures are

26

. . . specific deterrents and, like civil contempt, they seek to secure compliance with the particular order at hand . . . courts are free to consider the general deterrent effect their orders may have on the instant case and on other litigation. . . ." *Cine Forty-Second St. Theatre v. Allied Artists*, 602 F.2d at 1067.

The Second Circuit's decision in *Cine* is both helpful and instructive with regard to the discovery sanction sought in the instant case. There, a magistrate judge had recommended the preclusion of proof of damages as a sanction for plaintiff's failure to answer interrogatories satisfactorily. After being advised by the magistrate judge that its supplemental interrogatory answers on damages continued to be deficient, the plaintiff failed to obey two subsequent orders of the magistrate judge compelling discovery. *Id*. at 1064. At a hearing, the magistrate judge found plaintiff's non-compliance to be willful and assessed $500 in costs against it, and thereafter warned plaintiff that any further noncompliance would result in dismissal. *Id*. After another directive, plaintiff filed two sets of answers, both of which were found by the court to be seriously deficient. *Id*. at 1065. The court then ordered plaintiff to cure the defects or the complaint would be dismissed. When plaintiff did not comply, defendants moved for dismissal, citing plaintiff's failure to obey the court's order. *Id*. At a hearing, after noting plaintiff's history of "disobedience in the face of [] repeated warnings," the magistrate judge concluded that Cine's present non-compliance was willful and recommended to the district judge that Cine be precluded from introducing evidence with respect to damages. *Id*. Essentially, this sanction was tantamount to a dismissal of Cine's damage claim, but left its claim for injunctive relief. *Id*.

The district judge had the same reaction to Cine's conduct as the magistrate judge, but could not fully accept the finding of willfulness. Subsequently, the district judge certified an

interlocutory appeal to the Second Circuit on his own motion under 28 U.S.C. § 1292(b). *Id.*

The Second Circuit stated that "[t]he question before us is whether a grossly negligent failure to

obey an order compelling discovery may justify the severest disciplinary measures available

under Fed. R. Civ. P. 37." *Id.* at 1066. In answering that question, the Second Circuit stated the

following:

> Unless we are to assume that the Court chose its words carelessly, we must
> accord the term "fault" a meaning of its own within the *Societe International*
> triad. And plainly, if "fault" has any meaning not subsumed by "willfulness" and
> "bad faith," it must as least cover gross negligence of the type present in this
> case. . . in this day of burgeoning, costly and protracted litigation courts should
> not shrink from imposing harsh sanctions where, as in this case, they are clearly
> warranted. . . .
>
> Plaintiff urges that because it has at last filed answers to the damages
> interrogatories, it should be permitted to prove its losses at trial. But it forgets
> that sanctions must be weighed in light of the full record in the case [citation
> omitted] . . . Moreover, as we have indicated, compulsion of performance in the
> particular case at hand is not the sole function of Rule 37 sanctions. Under the
> deterrence principle of *National Hockey*, plaintiff's hopelessly belated
> compliance should not be accorded great weight. Any other conclusion would
> encourage dilatory tactics, and compliance with discovery orders would come
> only when the backs of counsel and the litigants were against the wall.

*Id.* at 1067-68. Ultimately, the Second Circuit reversed the district judge's order declining to

adopt the magistrate judge's recommendation that plaintiff be precluded from offering proof of

damages. *Id.* at 1068.[4]

Plaintiff's repeated arguments that dismissal is unwarranted absent a specific finding of

willfulness and/or bad faith are also unavailing. Discovery has been in a virtual quagmire since

---

[4]    Other courts as well have granted default judgments in cases where one party refused to
adequately respond to the interrogatories. *See, e.g., Davis v. Fendler*, 650 F.2d 1154 (9th Cir.
1981); *Affanato v. Merrill Bros.*, 547 F.2d 138 (1st Cir. 1977); *Int'l Mining Co., Inc. v. Allen &
Co., Inc.*, 567 F. Supp. 777 (S.D.N.Y. 1983).

November 4, 2005 when Magistrate Judge Orenstein first directed Plaintiff to respond to the three initial interrogatories. Since then, there has been continuous motion practice and multiple court Orders addressing this issue. Moreover, Plaintiff's eleventh hour assertion that Mediatrix's products do not infringe any particular claim of the '769 patent but rather infringe the patent as a whole is made of whole cloth and is untenable. Plaintiff provides not a scintilla of viable support for such a disingenuous theory.

Plaintiff has been given every opportunity, and then some, to provide a substantive response to Defendants' Interrogatory No. 3 that includes an element-by-element analysis of the claim limitation. The pattern of dilatory behavior displayed by Plaintiff over the course of discovery weighs in favor of a finding of willfulness. Plaintiff had a duty to engage in discovery in good faith but failed to do so. Plaintiff's failure to comply with its discovery obligations and the Orders of the Court was willful, and such willfulness weighs in favor of dismissal of the Amended Complaint.

### B.    Lesser Sanctions

A sanction issued pursuant to Rule 37 "must be 'just' and 'must relate to the particular claim to which the discovery order was addressed.'" *Ocello v. City of New York*, 2008 WL 789857, at *20 (quoting *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991) (citations omitted). What lesser sanction is available as an alternative here to dismissing Plaintiff's Amended Complaint? Allowing discovery to continue in ths case would be an exercise in futility. Plaintiff has already conceded that it has no further information that will enable it to answer Interrogatory No. 3 in a satisfactory as well as required manner. The threshold for answering the interrogatory was not high to begin with – essentially, Plaintiff had

29

to explain the good-faith basis for its belief that there was infringement.  This required Plaintiff to compare the claims of the patent to the accused device, and to make the comparison on an element-by-element basis  –  no actual proof of infringement was yet required.

In interpreting Rule 11 in patent infringement cases, the Federal Circuit has required "at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement." *ResQNET.com, Inc. v. Lansa, Inc.*, 382 F.Supp. 2d 424, 453 (S.D.N.Y. 2005) (citing Federal Circuit cases).   It is not enough to state in conclusory fashion that an accused product infringes, as Plaintiff has done here.  As the holder of the patent, Plaintiff RTI has an obligation to state *how* the product infringes, and it does so by comparing the accused product to the patents at issue on a claim by claim, element-by-element basis.  *See New York Univ. v. E.piphany, Inc.*, No. 05-CV 1929, 2006 WL 559573, at *2 (S.D.N.Y. Mar. 6, 2006).  Plaintiff not only has not done so, it admits that with what it knows now, it cannot do so.

As Defendants have pointed out, the claim chart diagram provided by Plaintiff's expert showing one Mediatrix device, the "ATA," forms a "small part of the entire 'system'."  Def. Mem. in Supp. at 11.  Throughout the claim analysis, however, Plaintiff asserts that "claim elements are found in non-Mediatrix products in the drawing." *Id*.  Plaintiff has alleged direct infringement for all of Mediatrix's products but one.  As Defendants note, "[t]his requires that each and every element be found in the accused Mediatrix product  – not merely in a system which includes the Mediatrix product.  Yes, only the imaginary 'system' of the drawing is analyzed in RTI's answers." *Id*. at 12.

30

I do not find lesser sanctions to be available or appropriate here.  Allowing discovery to continue in this case would be an exercise in futility, especially since Plaintiff continues to reiterate that it cannot give what it does not have.  The chronology of this case makes it quite evident that Plaintiff did not do appropriate due diligence prior to commencing this lawsuit.  If it cannot provide the necessary element-by-element analysis of the claim limitations this late in the game, no amount of time or lesser sanction is going to cure that deficiency and failure to comply.  Giving Plaintiff more time to fulfill its discovery obligations when it has not be able to do so in three years is no longer an option.

### C.    Prejudice to Other Parties

The conduct of Plaintiff throughout the course of discovery has prejudiced Defendants by delaying the resolution of the claims and defenses and increasing the costs of litigation.  *See Ocello v. City of New York*, 2008 WL 789857, at * 8.  From the commencement of this action and the very first appearance before Magistrate Judge Orenstein, this litigation has been mired in virtually the same discovery dispute and has not moved one step closer to trial readiness.  Permitting Plaintiff to proceed with prosecuting their patent infringement claims at this stage will not remedy the substantial prejudice already endured by Defendants in attempting to prepare their defenses.  Accordingly, this factor weighs heavily in favor of striking the pleading.

### D.    Duration of Non-Compliance

Viewed as a whole, Plaintiff's failure to provide an acceptable response to Interrogatory No. 3 has lasted close to three years.  Throughout the litigation, Plaintiff has failed to take the most basic steps needed to fulfill its discovery obligations.  The record is replete with examples of Plaintiff's dilatory conduct.  The number of directives and Orders issued by the Court and

ignored by or deliberately not complied with have been set forth at length in this Report and Recommendation and the parties are respectfully referred to Sections II and II of this decision. Because Plaintiff repeatedly violated discovery orders over a remarkably extensive period of time and obstructed the progress of discovery, I find that this factor weighs in favor of the most severe sanction, namely, dismissing the Complaint.

### E.    Warnings/Knowledge of Consequences

Although courts in this Circuit do not consider formal warnings a condition precedent, such warnings should be taken into consideration in choosing an appropriate sanction.  *See Daval Steel Prods.*, 951 F.2d at 1366; *Ocello v. City of New York*, 2008 WL 789857, at * 22.  The record here clearly establishes the fact that Plaintiff was provided with multiple warnings that failure to comply with discovery orders would result in sanctions, including the most severe as set forth at the conclusion of the Court's September 5, 2007 Order, which bears repeating here:

> Consequently, in light of the above information and the prior Orders of this Court, I am **giving Plaintiff one final opportunity to respond to Defendants' Interrogatory No. 3**.  Plaintiff is directed  to do so no later than September 27, 2007.  This final opportunity is being given so as not to prejudice the Plaintiff's rights in this action.  **I am cautioning Plaintiff, however, that this is indeed its last opportunity to comply with the directives of this Court and Plaintiff proceeds at its own peril.**  If a full and complete response is not provided to Defendants with respect to Interrogatory No. 3, **I shall recommend to District Judge Seybert that this matter be dismissed** pursuant to Fed. R. Civ. P. 37(b)(2)C).

DE 140 at 8-9 (emphasis added).

Plaintiff cannot reasonably contend that it did not know the risks it was taking by failing to provide an appropriate, substantive response to Interrogatory No. 3.  Nor does Plaintiff's somewhat cavalier response that it "doesn't need to produce information which it doesn't have"

32

[DE 149] grant it a reprieve from accountability under Rule 37.  Contrary to Plaintiff's beliefs, the facts here establish both disobedience and bad faith on Plaintiff's part.  The gamesmanship employed by Plaintiff in an attempt to shift the burden to Defendants to prove they do not infringe the patents at issue has played itself out long enough.  Plaintiff has repeatedly flouted the Orders of this Court as well as its discovery obligations and its explanation for its actions raises more troubling questions than Plaintiff can answer.  As one court in this district has observed: "[t]here is no way to view the entirety of the [Plaintiff's] conduct in this litigation without concluding that [it] has had no concern for the discovery rules that are designed to give each litigant a fair opportunity to prepare for a trial on the merits."  Ocello v. City of New York, 2008 WL 789857, at * 23.

Given the number of clearly stated warnings, there is no doubt that Plaintiff was on notice that its conduct could lead to sanctions, including dismissal of the Complaint.  This factor, therefore, also weighs in favor of dismissing the Complaint.

## VII.    PLAINTIFF'S REMAINING CONTENTIONS

In its opposition and during oral argument on October 24, 2007, Plaintiff relied heavily on two cases to support its position that sanctions are not warranted against it.   Both of these cases are distinguishable from the instant action.  In the first case, *Cambridge Products, Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048 (Fed. Cir. 1992), the defendant moved, pursuant to Fed. R. Civ. P. 11 and 35 U.S.C. § 285, for an award of attorney's fees in connection with the voluntary dismissal, with prejudice, of Cambridge's infringement lawsuit.  The District Court for the Eastern District of Pennsylvania denied the motion and defendant appealed the decision to the

33

Federal Circuit. *Id*. at 1049.   It is significant to note that in *Cambridge*, the plaintiff moved for

voluntary dismissal under Fed. R. Civ. P. 41(a)(2) just two weeks after it filed the lawsuit.  *Id*.

In considering the factual scenario in *Cambridge*, the Federal Circuit stated the following:

> Rule 11 requires that Cambridge have made a reasonable inquiry into both the
> facts and the law supporting particular pleadings.  Penn argues that although
> Cambridge performed an independent chemical analysis of its allegedly
> infringing product, Cambridge did not make any attempt to determine the *method*
> by which the 6 BA liquid was made before the complaint was filed and that a
> simple phone call to Penn would have revealed that the method was not the same.
>
> . . . Cambridge appears to have undertaken a reasonable pre-filing inquiry in
> preparing for and commencing this litigation.  Cambridge had tested a sample of
> the allegedly infringing product and had commissioned further chemical analyses
> and acquired documentary evidence that appeared to confirm that the product
> alleged to have infringed fell within the chemical specifications of the patented
> method.   Without the aid of discovery, any further information was not
> practicably obtainable.

*Id.* at 1050.

Plaintiff's reliance here on *Cambridge* is misplaced.  The plaintiff in *Cambridge* had a

good-faith basis to fall back upon – it did an independent chemical analysis of the allegedly

infringing product, tested a sample, and commissioned further chemical analyses to gather the

necessary documentation before filing the lawsuit.  By contrast in the instant action, Plaintiff

RTI's pre-filing inquiry in preparing to commence this litigation was not reasonable nor was it

made in good faith.  Defendant has repeatedly called for the information Dr. Schmuel ???

purportedly reviewed and relied upon in completing a claim analysis on an element-by-element

basis prior to Plaintiff commencing this lawsuit.  Plaintiff has never done so.  In addition, it is not

just a matter of what happened pre-filing in these circumstances, but Plaintiff's continuing failure

34

to comply with the ongoing series of Orders issued by this Court after the litigation was in

progress, and after Defendants had provided all of their product information as requested.

Likewise, Plaintiff can draw little solace from *Hoffman-LaRoche Inc. v. Invamed, Inc.*,

213 F.3d 1359 (Fed. Cir. 2000). In *Hoffman-LaRoche*, plaintiffs dismissed their complaint as

part of a settlement of a patent infringement action. *Id.* at 1360. Defendant then moved for the

imposition of sanctions under Rule 11 claiming that plaintiffs filed "a baseless suit without a

proper investigation." *Id.* One defendant, Torpharm, wanted plaintiffs to pay its legal costs

involved in an agreed-upon confidential review of processes plaintiffs claimed infringed the

patent at issue. Plaintiffs' representative responded that it would not do so because defendant

had incurred those costs "by refusing to cooperate with [plaintiff's] pre-filing inquiries." *Id.* at

1362. In denying sanctions under Rule 11, the district court ruled that plaintiffs' pre-filing

inquiry was reasonable. It based that conclusion on the fact that plaintiffs (1) attempted to

ascertain whether the Abbreviated New Drug Application for a generic form of ticlopidine

hydrochloride filed by one of the defendants showed that the manufacturing process for that

product infringed plaintiffs' patents on the processes for making the generic drug; (2) requested

from that defendant disclosure of the manufacturing processes which defendant refused to

disclose; and (3) obtained samples of the generic drug but could not determine by reverse

engineering whether the drug had been manufactured by the patented processes. *Id.* at 1363.

Importantly, the Federal Circuit found that the inquiry made by plaintiffs in *Hoffman-

LaRoche* was even "more extensive than the inquiry *Cambridge* made, which this court held was

a reasonable one." *Id.* at 1365. For the same reason that Plaintiff's reliance here on *Cambridge*

is ineffective, its attempt to compare its pre-filing inquiry to that of *Hoffman-Laroche* is equally unavailing.

## VII.    CONCLUSION

What Plaintiff was ordered to do repeatedly was to provide fundamental information basic to any patent infringement action, namely, Plaintiff's theory of liability, broken down in the necessary element-by-element analysis of the claim limitation.    Whether Plaintiff cannot or will not do so at this juncture is an academic exercise  – Plaintiff has not done so, nearly three years into this litigation.  Such conduct cannot continue to be countenanced.

For the reasons set forth above, I respectfully recommend to Judge Seybert that Defendants' motion for sanctions, pursuant to Rule 37(b)(2)C), based upon Plaintiff's repeated, willful failure to fully and adequately respond to Defendants' interrogatories and to the Orders of this Court, be granted.  Consistent with that recommendation, I further recommend to Judge Seybert that Plaintiff's Amended Complaint be dismissed in its entirety.

Traditionally, any objection to a Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service and failure to file objections within this period waives the right to appeal.  *See* 28 U.S.C. § 636(b)(1)(C)(West 2006); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).   Therefore, the parties are hereby informed that written objections to this Report and Recommendation, if any, must be filed with Judge Seybert within the prescribed time period.

**SO ORDERED.**

Dated: Central Islip, New York
       March 31, 2008


/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge

# EXHIBIT 3

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003
www.kslaw.com

Ethan Horwitz
Direct Dial:  212-556-2377
Direct Fax:   212-556-2222
ehorwitz@kslaw.com

April 23, 2008

Hon. Joanna Seybert                                    **VIA ECF**
United States District Court
Eastern District of New York
Long Island Courthouse
100 Federal Plaza
Central Islip, NY 11722-4438

> Re:    **Rates Technology, Inc. v. Mediatrix Telecom, Inc.,** Case No. 2:05-cv-2755 JS
>            **(AKT) (E.D.NY)**

Dear Judge Seybert:

        We write on behalf of the defendants in the above matter in response to plaintiff's letter
of April 18, 2008.

        On March 31, 2008, Magistrate Judge A. Kathleen Tomlinson submitted her Report and
Recommendation in this case recommending that the defendants' motion for sanctions be
granted and the case dismissed.  Judge Tomlinson's recommendation comes after close to three
years of efforts by the defendants to secure an adequate response to a single interrogatory
regarding the basis for the plaintiff's contention that the defendants infringed the asserted
patents-in-suit.  The plaintiff repeatedly failed to provide adequate information, despite four
court orders to do so.  In the Report and Recommendation, Judge Tomlinson found that the
plaintiff's failure to comply with the court's previous orders was willful and in bad faith, and that
the plaintiff had failed to take the most basic steps needed to fulfill its discovery obligations.
Judge Tomlinson further found that the plaintiff's dilatory actions prejudiced the defendants by
delaying the resolution of the claims and increasing the costs of litigation.  As stated by Judge
Tomlinson:  "The chronology of this case makes it quite evident that Plaintiff did not do
appropriate due diligence prior to commencing this lawsuit" [Doc. No. 155, p. 31].  In light of
her findings, Judge Tomlinson has recommended that the defendants' motion for sanctions
pursuant to Fed. R. Civ. P. 37(b)(2)(C) be granted, and the case dismissed.[1]

        As part of their motion for sanctions under Fed. R. Civ. P. 37(b)(2)(C), the defendants
moved for an award of attorneys' fees "for all fees incurred in connection with all efforts to

---

[1] Plaintiff has not objected to the case being dismissed.

Hon. Joanna Seybert
April 23, 2008
Page 2

obtain adequate interrogatory responses" [Doc. No. 153]. Yet plaintiff contends that Judge
Tomlinson did not recommend the awarding of monetary sanctions. This is incorrect. First, the
clear language of Judge Tomlinson's Report states that defendants' motion (which included
monetary sanctions) should be granted. In addition, both the previous version and the current
version of Fed. R. Civ. P. 37(b)(2) explicitly require[2] an award of attorneys' fees <u>in addition to</u>
any other sanction when a party fails to obey a court order. The previous version of Fed. R. Civ.
P. 37(b)(2)(C) provides:

> If a party . . . fails to obey an order to provide or permit discovery . . . . **the court
> shall require the party failing to obey the order or the attorney advising that
> party or both to pay the reasonable expenses, including attorney's fees,
> caused by the failure,** unless the court finds that the failure was substantially
> justified or that other circumstances make an award of expenses unjust (emphasis
> added).

The current version of Fed. R. Civ. P. 37(b)(2) is even more explicit, providing:

> If a party . . . fails to obey an order to provide or permit discovery . . . . the court
> **must** order the disobedient party, the attorney advising the party, or both to pay
> the reasonable expenses, including attorney's fees, caused by the failure, unless
> the failure was substantially justified or other circumstances make an award of
> expenses unjust (emphasis added).

As provided for by the clear language of the rule, an award of attorneys' fees is therefore
specifically included in Judge Tomlinson's recommendation, and also subsumed in the
recommendation that the case be dismissed pursuant to Fed. R. Civ. P. 37(b)(2)(C). Judge
Tomlinson found that the plaintiff's failure to provide discovery was willful and in bad faith.
Despite its repeated arguments to the contrary, neither the plaintiff nor its attorneys established
that their failure to provide discovery was substantially justified, as required by Fed. R. Civ. P.
37(b)(2). Furthermore, in its April 18 letter, the plaintiff simply rehashes the same arguments
that were previously considered and rejected by Judge Tomlinson. The plaintiff's arguments that
such a monetary award is improper are without merit, and an award of monetary sanctions
pursuant to Fed. R. Civ. P. 37(b)(2)(C) should be entered.[3]

---

[2] As stated in the advisory committee notes to the rule, Fed. R. Civ. P. 37(b)(2) was "amplified to provide for
payment of reasonable expenses caused by the failure to obey the order. . . . The provision places the burden on the
disobedient party to avoid expenses by showing that his failure is justified or that special circumstances makes an
award of expenses unjust."

[3] Interestingly, plaintiff cites <u>Mone v. Comm'r</u>, 774 F.2d 570, 574 (2d Cir. 1985) for the proposition that sanctions
"should be construed narrowly and with great caution." In <u>Mone</u>, the court upheld sanctions entered against an
attorney who unreasonably and vexatiously multiplied proceedings in the case. The parallels between <u>Mone</u> and this
case are remarkable. As Judge Tomlinson found, it is "quite evident that Plaintiff did not do appropriate due
diligence prior to commencing this lawsuit," resulting in the needless extension of this case for nearly three years.

Hon. Joanna Seybert
April 23, 2008
Page 3

      The plaintiff and its counsel also complain that they were not put on notice that the defendants were seeking monetary sanctions against them. The defendants' Notice of Defendants' Motion for Sanctions and Memorandum of Law in Support thereof laid out the accusations of the misconduct, the applicable rule providing for the sanctions, and an explicit request that "the Court impose as an appropriate sanction dismissal of RTI's infringement claims with prejudice <u>and</u> an award of attorneys' fees to Mediatrix for all fees incurred in connection with all efforts to obtain adequate interrogatory responses"[4] [Doc. No. 153]. At the October 24, 2007 hearing, the plaintiff and its counsel acknowledged that the defendants met and conferred with them regarding the motion for sanctions, as required by Local Rule 37.3 [Doc. No. 152, p. 27, l. 9-12]. Furthermore, as outlined in the Report and Recommendation, Judge Tomlinson repeatedly warned the plaintiff and its counsel that failure to comply with discovery orders would result in sanctions, including sanctions under Fed. R. Civ. P. 37(b)(2)(C)[5] [Doc. No. 155, p. 32-33]. Finally, the plaintiff and its counsel attained due process on the matter with the filing of their October 12, 2007 letter [Doc. No. 149] opposing the defendants' motion for sanctions, as well as during the October 24, 2007 hearing on the matter.[6] The plaintiff's and its counsel's contentions that it did not have notice that the defendants were seeking monetary sanctions against them, or due process in defending the attainment of such monetary sanctions, are unfounded.[7]

      Finally, the plaintiff's attempts to raise objections to Judge Tomlinson's Report and Recommendation are untimely. 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72 provide that any objection to a magistrate judge's report and recommendation must be filed within ten days of service, and failure to do so waives any right to appeal. The Report and Recommendation was delivered to the plaintiff on April 1, 2008. Thus, under the local rules, the plaintiff had until April 16, 2008, to file an objection. Plaintiff failed to do so, instead relying on the three day mailing provision contained in Fed. R. Civ. P. 6(e) as an excuse for its late filing. This is not the first time in this case that plaintiff and its counsel has erroneously relied on this inapplicable three day provision in excusing its late filing. Plaintiff is well aware that this court's local rules do not provide for a three day mailing provision for documents filed through the ECF. <u>See</u> Administrative Order 97-12 § 6(b). Because of this late filing, the plaintiff has waived any right to object to Judge Tomlinson's Report and Recommendation. Therefore, any objections raised by the plaintiff in its April 18 letter should be disregarded.

---

[4] <u>See</u> <u>Schlaifer Nance & Co. v. Powell, Goldstein, Frazer & Murphy</u>, 194 F.3d 323, 334 (2nd Cir. 1999) (mandating that the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions; and (2) the specific conduct for which the sanctions are being sought).

[5] As described above, sanctions under Fed. R. Civ. P. 37(b)(2)(C) include monetary sanctions.

[6] <u>See</u> <u>Schlaifer Nance & Co.</u>, 194 F.3d at 335 (finding that due process with respect to sanctions is satisfied by an opportunity to be heard, which may include oral arguments or the submission of written briefs on the matter).

[7] The plaintiff further attempts to side-step this issue by claiming that the defendants "never responded or addressed" a footnote in the plaintiff's letter of October 12, 2007, opposing the motion for sanctions against its counsel. The plaintiff fails to mention, however, that Judge Tomlinson's Order dated September 5, 2007 [Doc. No. 142] did not permit the filing of a reply to its letter.

Hon. Joanna Seybert
April 23, 2008
Page 4

Sincerely,

Ethan Horwitz

BRB


cc:  James B. Hicks, Esq. (via ECF)

# EXHIBIT 4

BOCA RATON
CHICAGO
LONDON
LOS ANGELES
NEW ORLEANS
One International Place   NEW YORK
Boston, MA 02110-2600  NEWARK
Telephone 617.526.9600  PARIS
Fax 617.526.9699    SÃO PAULO
WASHINGTON

# PROSKAUER ROSE LLP

**Steven M. Bauer**
Member of the Firm

Direct Dial 617.526.9700
sbauer@proskauer.com

May 1, 2008

<u>**VIA E-MAIL**</u>

Robert L. Epstein, Esq.
Epstein Drangel Bazerman & James, LLP
Lincoln Building
60 East 42nd Street, Suite 820
New York, NY 10165

    Re:   *Rates Technology, Inc. v. Qwest Communications, Co., et al.,*
        <u>C.A. No. 07-442 (JJF)</u>

Dear Bob:

    We are aware of the supplemental filings that you have made to the Patent Office after the final rejection of the key claims in the reexamination of U.S. Patent No. 5,425,085 ("the '085 Patent").

    I write now on behalf of defendants Qwest Communications Corporation and Qwest Communications International, Inc., (collectively, "Qwest") to remind you of your professional (and personal) obligation to the United States Patent and Trademark Office ("USPTO") of candor and good faith in connection with the '085 Patent reexamination. This letter serves as notice that we believe you have failed to meet your obligations, and should you fail to rectify these failings, some of which are described below, Qwest will, as Mediatrix is doing presently in the E.D.N.Y case, seek to hold both RTI and you and your firm jointly liable, under all applicable rules and law, for any expenses or legal fees incurred by Qwest as a result of what we believe was your failure to disclose all pertinent information to the Patent Office.

    As you know, you, as prosecuting attorney, have a duty to disclose to the USPTO "all information known… to be material to patentability." MPEP §2280. Material information arising from litigations relating to the '085 Patent must be disclosed to the USPTO, including "any assertion…contradictory to assertions made to the examiner….Such information might arise during litigation in, for example, pleadings, admissions, discovery including interrogatories, depositions, and other documents and testimony." *See* MPEP §2001.06(c).

**PROSKAUER ROSE LLP**

Robert L. Epstein, Esq.
May 1, 2008
Page 2

A review of the Information Disclosure Statements that you filed in the '085 Reexamination shows that, besides a few documents from *Mediacom Corp. v. Rates Technology Inc.*, Case No. 97-10559-WGY (D. Mass) ("MediaCom"), all dated 1997, you have not disclosed *any* litigation documents. It certainly cannot be the case that RTI has not once provided an infringement or claim construction position in writing to an opposing counsel, or given relevant testimony at a deposition, or created any other relevant substantive document, in the over 20 litigations relating to the '085 Patent that RTI has filed since 1997. We believe it is your obligation to review all such documents and disclose any inconsistent position to the Patent Office.

To assist you in this regard, with only limited access to certain documents in the public domain, we were able to quickly determine that in *Rates Technology, Inc. v. Mediatrix Telecom, Inc., et al.*, Case No. 05-CV-2755 (EDNY) ("Mediatrix"), the Report and Recommendation of Magistrate Kathleen Tomlinson, dated March 31, 2008, references a series of interrogatories and responses relating to, *inter alia*, RTI's element by element contention of how it contends the '085 Patent should be construed to find infringement. No doubt similar documents exist in other cases involving the '085 Patent. We believe these documents must be disclosed. It is simply improper for you to selectively determine which litigation documents to disclose to the USPTO when the disclosure rules, and case law interpreting those rules, requires full disclosure. In addition, it is also improper to disclose older documents relating to one specific class of accused product and omit positions your client has taken recently relating to an entirely different class of VoIP products accused of infringement.

For example, the Shur Declaration submitted to the Patent Office purports to distinguish the claims of the '085 Patent from the cited prior art by arguing that the prior art discloses Automatic Route Selection ("ARS"), something which Mr. Shur claims in his declaration is "fundamentally" different from Least Cost Routing, which is described in the patent. *See* ¶¶ 9-10. However, in RTI's Opposition to Mediatrix's Dismissal Motion filed in Mediatrix, RTI argued an inconsistent position, suggesting that automatic route selection *was* an important distinguishing feature of the RTI patent, saying: the U.S. 4,751,729 ("Treat") prior art reference "doesn't provide for automatic route selection," and therefore "has nothing to do with the '085 patent." *See* p. 12. We believe you have a duty to disclose these documents to the USPTO and provide an explanation for this inconsistency.[1]

---

[1] We note also that you have failed to disclose important facts and documents pertaining to Mr. Shlomo Shur's relationship with RTI, when you submitted his declaration under 37 CFR §1.132 on behalf of Rates Technology Inc. ("The Shur Declaration"). Apparently Mr. Shur has been employed as a paid litigation expert for RTI on the infringement of the '085 Patent in the *Mediatrix* litigation, and may have been similarly employed in connection with other litigations involving the '085 Patent. This fact was not disclosed in the Shur Declaration or the accompanying Remarks, and goes to the credibility/bias of the Shur Declaration. You have also not submitted to the Patent Office Mr. Shur's March 15, 2005 opinion letter describing his

**PROSKAUER ROSE LLP**

Robert L. Epstein, Esq.
May 1, 2008
Page 3

Similarly, the Shur Declaration's assertion that a device that practices automatic route selection does not practice the invention of the '085 Patent is inconsistent with statements you have made in the present case that there is no way the accused Qwest devices can work except in an infringing manner. "RTI contends that the Qwest OneFlex systems do, in fact must, have a database in which cost information relating to possible routes is stored and must have a means for addressing that database to obtain the information stored therein." *See* Declaration of Robert L. Epstein submitted in Opposition to Defendants' Motion to Dismiss or Stay Complaint, dated Sept. 3, 2007, at ¶ 12. RTI's statements to the USPTO and separately to the Qwest Court cannot both be correct, and this inconsistency must be disclosed, *and explained*, to the USPTO.

The above examples of deficiencies are meant to be illustrative, and the responsibility to determine the universe of documents and information that should have been provided to the USPTO is yours. We urge you to cure these deficiencies with enough time and with sufficient explanation to allow the Examiner to give proper consideration, before the Examiner acts upon your latest arguments.

Very truly yours,

Steven M. Bauer

SMB/sa

---

understanding of the scope of the '085 Patent. Exhibit D to the Sept. 7, 2006 Declaration of James B. Hicks in Opposition to Mediatrix's Rule 11 Motion. Mr. Shur's involvement in the *Mediatrix* litigation, the identities of any other matters he has been involved, the amount of his compensation from RTI, along with all documents generated by Mr. Shur pertaining to the '085 patent are unquestionably material, and should have been disclosed, before you asked the Patent Office to rely on his declaration in overturning its final rejection.

# EXHIBIT 5

## REMARKS

Patent Owner, Rates Technology Inc., hereby requests reconsideration and withdrawal of the rejections of claims 1-5, 7-16, 18-29 under 35 USC 102(b) as anticipated by Isoetec, Vodavi or Jabs et al. (Jabs), the rejection of claim 12 under 35 USC 103(a) as unpatentable over Jabs and the rejection of claims 20 and 21 under 35 USC 103(a) as unpatentable over Isoetec in view of Jabs, based upon the following arguments in favor of patentability and upon the accompanying Declaration of Shlomo Shur under 37 CFR 1.132.

Mr. Shur was the head of the group of software engineers responsible for the development, programming and support of both the Vodavi system and the Isoetec system during the 1988-1990 time period. Accordingly, he is personally familiar with the hardware and operation of both of those systems. More recently, Mr. Shur has been employed as a software engineer by various entities and as a part time consultant to Rates Technology Inc.

Claims 6 and 17 are deemed patentable.

The rejection of claims 1, 2, 5, 7 and 10 under 35 USC 102(b) as anticipated by U.K. Patent Application No. 2,218,595 has been withdrawn.

As set forth in detail below, there are material elements of each of independent claims 1, 14, 24, 27, 28 and 29, and hence the claims dependant on those claims, which